## Hamburg-Bremen Fire Insurance Company of Hamburg, Germany v. Ohio Valley Dry Goods Company's Trustee.

## Fireman's Fund Insurance Co., of San Francisco, California v. Same.

## Northern Assurance Company of London, England v. Same.

(Decided October 14, 1914.)

### Appeals from Muhlenberg Circuit Court.

1. Corporations—Doing Business With Want of Legal Organization as Defense.—Under section 566 of the Kentucky Statutes, a person who transacts business with a corporation organized under the laws of Kentucky, will not be permitted to rely upon the corporation's want of legal organization as a defense to an action.

2. Corporations—What Will Not Avoid Policy of Insurance on Stock of.—The acquisition by one stockholder of all the stock of a corporation does not constitute such a change of title and interest in the property owned by the corporation as will avoid a policy of insurance thereon, which provides for avoiding the policy in case there is a change of title and interest in the property insured.

3. Evidence—When Declaration Deemed To Be Relevant—A declaration is deemed to be relevant if the declarant had peculiar means of knowing the matter stated, if he had no interest to misrepresent it, and if it was opposed to his pecuniary or proprietary interest; the fact that the witness may be prosecuted or disgraced by reason of his declarations does not render them competent in the absence of a pecuniary or proprietary interest.

4. Corporations—Transfer of Stock for Fraudulent Purpose—Avoidance of Insurance Policy.—The transfer of all the capital stock of a corporation by the owner thereof to another person for a fraudulent purpose, does not constitute such a transfer of the possession of the insured property of the corporation as will avoid a policy of insurance which contains a provision that the insurance is to be void in case there should be a change of title, interest or possession of the property insured.

5. Contracts—Character of Misrepresentations That Will Render a Contract Void.—Misrepresentations which will render a contract fraudulent, includes only misrepresentations or suppressions of the truth in relation to the contract which is the subject of the litigation; the court will not go outside of the case for the pur-

pose of examining the conduct of the parties in other matters, or question their general character for fair dealing.

FLEXNER & GORDON, J. S. LAURENT, LaVEGA CLEMENTS, BEN D. RINGO and T. J. SPARKS for appellants.

E. B. ANDERSON, TAYLOR & EAVES and W. E. AUD for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

On January 25, 1910, S. T. Burns, Charles Cohn, F. T. McIntyre, William Rowland and John McLemore incorporated "The Ohio Valley Dry Goods Company" for the purpose of doing a general merchandise business in Owensboro, Kentucky. Of the capital stock of $25,000.00, divided into shares of the par value of $100.00 each, Burns subscribed for 5 shares, Cohn for 124 shares, McIntyre for 40 shares, Rowland for 80 shares, and McLemore for 1 share. The corporation began business about February 1, 1910, in a store room located on West Second street, in Owensboro.

The stock of goods was insured by three policies, one policy having been issued by each of the three appellant fire insurance companies on March 3, 1910, on June 20, 1910, and on August 21, 1910, respectively. One of the policies insured the company against loss by fire in the sum of $1,000.00, while the other two were for $2,500.00 each; making a total insurance of $6,000.00.

The corporation having become insolvent, several of its creditors filed their petition against it in the United States District Court in Louisville on November 30, 1910, seeking to have the company adjudged a bankrupt; and on the same day, or the day following, the store was closed permanently and ceased to do business. On the night of December 7, 1910, the stock of goods was almost wholly destroyed by fire. A week later, on December 14, the company was adjudged a bankrupt, and on January 3, 1911, the appellee, J. R. Laswell, was appointed and qualified as the trustee in bankruptcy.

Upon the failure of the insurance companies to pay the loss as provided by their policies, the trustee brought these three actions, which were heard together, and resulted in a verdict and judgment for the trustee for 62 per cent. of the policies, aggregating $3,720.00, against the three companies.

The insurance companies appeal, and urge five grounds for a reversal.

1. It is first contended that The Ohio Valley Dry Goods Company never had a legal existence as a corporation, for the reason that Charles Cohn was, at all times, the sole and unconditional owner of the property insured.

In organizing the corporation all the statutory requirements were complied with. Furthermore, upon this branch of the case we think it sufficient to say that if there had been any technical defects in the organization of the Ohio Valley Dry Goods Company, the appellants are in no position to defend upon that ground.

Section 566, of the Kentucky Statutes, provides as follows:

"No corporation organized under this chapter shall be permitted to set up or rely upon the want of legal organization as a defense to any action against it; nor shall any person transacting business with such corporation, or sued for injury done to its property, be permitted to rely upon such want of legal organization as a defense."

It is admitted that the appellants made this contract of insurance with the corporation, and for a valuable consideration; and that being true, they will not be permitted to now say that the corporation with which they dealt is not a corporation. They conceded that fact when they issued the policies of insurance to the corporation. This rule is too well established to need discussion; the citation of a few of the leading decisions upon the point will be entirely sufficient. Lail v. Mt. Sterling Road Co., 13 Bush, 33; Johnson v. Mason Lodge, 106 Ky., 838; Cumberland T. & F. Co. v. Louisville Home T. Co., 114 Ky., 892; Calor Oil & Gas Co. v. Franzell, 128 Ky., 715; 10 Cyc., 245, 284.

2. Assuming, however, that the Ohio Valley Dry Goods Company had a legal existence as a corporation, it is contended such existence was suspended when Cohn acquired the ownership of all the capital stock, and that this acquisition constituted such a change of title and interest as avoided the policies.

The minutes of the corporation show that at the first meeting of the incorporators held on February 1, 1910, Burns was elected president, Rowland vice-president, and Cohn secretary and treasurer. Burns acted as president until March 25, 1910, when he resigned and

was succeeded by Cohn, who also acted as treasurer. On November 1, 1910, Cohn resigned as president and treasurer, and E. D. Hodges was elected to fill both offices. In the meantime, Cohn had acquired all the stock of the corporation, and it is contended that this sole ownership of the capital stock transferred to Cohn the title to the stock of merchandise, thereby bringing about such a change of title and interest as to avoid the policies under that provision thereof, which provides for a nullification of the policies in case of a change of title or interest in the goods insured.

In support of this contention appellants rely upon Louisville Banking Co. v. Eisenman, 94 Ky., 83, and Louisville Gas Co. v. Kaufman-Straus Company, 105 Ky., 159.

In Louisville Banking Co. v. Eisenman, *supra,* it was held that where one person became the owner of all the shares in a corporation, it operated as a dissolution of the corporation to the extent that it suspended the exercise of the rights under the franchise until the owner transferred the stock, in good faith, so as to maintain an organization under the statute.

From January 26 to March 25, 1910, the stockholders were Burns, Charles Cohn, McIntyre, Rowland and McLemore. From March 25 to November 1, 1910, the stockholders were Charles Cohn, McIntyre, Rowland, McLemore and Ben Cohn, and after November 1, 1910, the stockholders were Hodges, Rowland, McIntyre, McLemore and Ben Cohn. But if we are to take the testimony of Hodges upon this question, Cohn owned none of the stock after November 1, 1910, because Hodges says that Cohn sold him all of the stock on that day. The answer does not contend that Hodges owned all the stock, at the time of the fire, but that Cohn owned it.

Speaking by the record, however, the stock was outstanding in the stockholders above named, although Rowland had never paid for his 80 shares. Furthermore, assuming the fact to be as claimed by appellants, and that Cohn did become the owner of all the stock, we do not agree with appellants that this operated as such a change of title and interest as to avoid the policies. The clause in the policies making this provision for a forfeiture evidently refers to actual changes made by the owner of the goods, and not a mere technical change that may arise as a matter of law. At all times up to the appointment of appellee as trustee the title to the

insured goods, as well as the possession thereof, was in the corporation. It will hardly be contended that Cohn or Hodges, individually, could have maintained an action to recover the purchase price of goods sold during the period in question. The title as well as the possession was in the corporation, and no rule is better settled than the one which recognizes the existence of the corporation, separate and distinct, from the owners of its stock.

3. Next, it is contended that Charles Cohn procured Bloom, a Chicago "fire-bug," to burn the property insured. The only evidence to support this contention is the declaration of Bloom made to Hodges in Chicago, in May, 1911, about five months after the fire, in the presence of Cohn, and assented to by him. Appellee excepted to this evidence as being incompetent against the trustee in bankruptcy, and the trial court sustained the exception. That was a proper ruling.

Appellants would make this testimony competent upon the ground that it is an admission by Cohn and Bloom against their interest. It will be remembered, however, that the title to the insured property had passed to the trustee in bankruptcy in January, 1911; and that at the time of the alleged admissions, neither Bloom nor Cohn was financially interested in the property of the Ohio Valley Dry Goods Company. The corporation had theretofore been adjudged a bankrupt and its property turned over to appellee as trustee for the creditors—the real owners.

In Stephen on Evidence, Article 28, the rule as to declarations against one's interest is stated as follows:

"A declaration is deemed to be relevant if the declarant had peculiar means of knowing the matter stated, if he had no interest to misrepresent it, and if it was opposed to his pecuniary or proprietary interest."

In support of the rule above announced, that a declaration in order to be admissible against interest, must be against the pecuniary or proprietary interest of the declarant, see Jones on Evidence, section 324; Wharton on Evidence, section 228; Taylor on Evidence, section 670; Greenleaf on Evidence, 5th Ed., section 149; Mercer's Admr. v. Mackin, 14 Bush, 434.

In the last named case this court said:

"That regard which men generally have for their own interest is the principal foundation upon which the rule admitting declarations against interest is based. Experience has taught us that when one makes a declara-

tion in disparagement of his own right or interest it is generally true, and because it is so the law has deemed it safe to admit evidence of such declarations against him and those claiming through or under him. But the rule is limited to declarations prejudicial to his pecuniary or proprietary interest."

It is contended, however, that although Cohn and Bloom had no pecuniary interest, their penal interest made their evidence competent. According to the later authorities, however, the fact that the declarant may be prosecuted or disgraced by reason of his declarations does not render them competent, in the absence of a pecuniary or proprietary interest.

In Chamberlayne on the Modern Law of Evidence, section 2779, the modern rule is stated as follows:

"In the nature of things, there are many kinds of interest which a sane declarant may well regard as of equal or even greater importance to him than his money or tangible possessions. So far as actually influencing his statements is concerned, the operation of such an interest may be equally potent with those of a pecuniary or proprietary nature. On principle, therefore, the assertion of a declarant antagonistic to such an interest ought properly, in the event of his death or equivalent unavailability to a proponent, be usable by the latter as secondary evidence of the facts asserted. Such, however, is not the present state of the law. The interest affected by the extra-judicial declaration must be materialistic, pecuniary, or proprietary. Even the value which a declarant may place upon his reputation or his interest in escaping the disgrace or unpleasant physical consequences of being known to have committed a criminal offense is not regarded as such that a declaration in derogation of it constitutes trustworthy evidence under the present rule."

In Burrell on Assignments, 5th Ed., section 404, it is said:

"It has also been held that the admissions of the assignor, after the assignment was completed, were admissible on the theory that the assignee is the representative and agent of the assignor. This doctrine, however, is not sustained by principle or authority. There is no title or interest between the insolvent assignor in trust for his creditors and his assignee. The latter holds primarily for the creditors and for those in hostility to the assignor. He does not represent merely or primarily

the assignor, nor hold chiefly for his interest and benefit, but rather for the creditors of the assignor, and is accountable in the first place to them. In order to make the declarations of the assignor, after the assignment, competent evidence, it must be shown that the assignor and assignee are combined in a common conspiracy to defraud the assignor's creditors, and this common purpose must be established by evidence other than the declarations themselves.''

See also note in 41 L. R. A. (N. S.), 1.

We conclude, therefore, that the statements of Cohn and Bloom, made in Chicago five months after Cohn had parted with all interest in the store, were incompetent as admissions against the trustee in bankruptcy, and that the trial court properly so ruled.

4. As heretofore stated, the policies contained provisions that any change of interest, title or possession of the goods insured, other than by the death of the insured, should avoid the policies. Under these provisions appellants contend that the transaction between Cohn and Hodges on November 1, 1910, in which it is claimed Cohn attempted to transfer the title to the property to Hodges for a fraudulent purpose, was such a transfer of the possession of the property as to avoid the policies under the provision above stated. This contention was, in effect, disposed of under a preceding clause of this opinion.

As was there pointed out the corporation owned the stock of goods that was insured; the business continued at all times to be conducted in the name of the corporation; any suit that could have been brought upon the policies during the lifetime of the company and prior to the appointment of the trustee in bankruptcy, could only have been brought in the name of. the corporation. The corporation being the owner of the goods, it would be laying down an extreme rule to say that a change in the personel of the stockholders, however great it might be, would change the possession or ownership of the property of the corporation, within the meaning of the clause of the policy.

5. Finally, it is contended that the policies were avoided by the fraudulent concealment by Cohn of the material fact that he had procured his Morganfield store to be burned on March 28, 1910, for the purpose of collecting the insurance thereon.

This defense certainly could not apply to the $1,000.00 policy sued on, since it was issued on March 3, 1910, more than three weeks before the Morganfield fire. Neither do we think the defense is applicable to any of the policies. It is not contended that Cohn made any misrepresentation concerning the Morganfield fire when he applied for the last two policies sued on; it is only claimed that he failed to voluntarily tell those two companies that he had fraudulently burned his Morganfield store in March—a charge which has not been proved to be true. We do not understand that the rule which makes a suppression of the truth fraudulent applies to transactions foreign to the contract which is the subject of the litigation; it applies only to misrepresentations or suppressions of the truth in relation to the contract which is the subject of the litigation in hand.

In speaking of the maxim, "he who comes into equity must do so with clean hands," Bispham's Equity, section 42, says:

"Of course, this maxim only applies to the particular transaction under consideration, for the court will not go outside of the case for the purpose of examining the conduct of the complainant in other matters, or questioning his general character for fair dealing (citing City of Chicago v. Stock Yards Co., 164 Ill., 224, and Shover v. Heller & Merz Co., 48 C. C. A., 49). Nor is it every prosecution of an unfounded claim that will bar a man from coming into a court of equity; there must be a wilful misconduct in regard to the matter in litigation."

See also American Association Limited v. Innis, 109 Ky., 595. The same principle applies in cases of alleged misrepresentation; the misrepresentation, be it either direct, or by a suppression of the truth, must have some direct relation to the transaction which is the subject of litigation. Cohn was not asked if he had burned his Morganfield store; in fact, it was not burned until after the first policy sued on had been issued.

If appellants had made Cohn's moral character an element of consideration in issuing the policies, and had asked him if he had burned his Morganfield store, and he had denied it, although, in fact, he had done so, they would have presented the case they now argue. But no such case is presented by the record, or decided.

Judgment affirmed in each appeal.