CHARLES FELDMAN, Plaintiff, *v.* THOMAS E. MURRAY, JR., as Receiver of Interborough Rapid Transit Company, Defendant.

Supreme Court, Special Term, Bronx County, May 5, 1939.

*Benjamin Glickman* and *Jacquin Frank,* for the plaintiff.

*James T. Quackenbush,* for the defendant.

MCGEEHAN, J.  This application is by the receiver of the Interborough Rapid Transit Company to serve an amended answer setting up facts in existence but unknown to defendant or the attorney when issue was joined on November 9, 1936.  By the proposed amended answer the defendant affirmatively alleges that he is a citizen of the United States of America and that the plaintiff is an alien and an individual who entered the United States illegally from Germany and remains in the United States illegally, he being an individual who had no right to enter the United States of America and obtained none, and one expressly forbidden to enter or remain in this country, and that he is accordingly under a disability to sue in our courts while unlawfully here after having secretly invaded the United States of America in violation of the laws of the United States of America.

The plaintiff, Charles Feldman, upon this application does not deny that he came into this country from Germany in 1928 as a cook on the steamship *Albert Ballin* and remained here illegally; that on March 16, 1935, as a result of the defendant's alleged

wrong, he suffered an injury that caused the amputation of his right leg; that in January, 1938, the immigration authorities at Ellis Island had extended the time of the plaintiff in which to depart to any other country except Canada to July 22, 1939. By that time it was contemplated that this litigation will be terminated. The plaintiff's sincerity in avoiding a return to Germany under prevailing conditions is unquestioned and readily understandable by all Americans. In the course of this court's research upon the question of law involved conflicting decisions were discovered and among the decisions found the following cases appear to be pertinent to the issue.

In the case of *Coules* v. *Pharris*, decided by the Supreme Court of Wisconsin in October, 1933 (212 Wis. 558; 250 N. W. 404), Mr. Justice FAIRCHILD, expressing the opinion of the court, stated:

" The statute expressly prohibiting aliens from entering this country as this respondent has entered it, creates a public policy of the United States to keep without our borders all who do not come within the quotas or exceptions thereto provided for in the Acts of Congress. The respondent's unlawful presence in the country is bound to be attended with restrictions and among them is the deprivation of the right to sue for wages in the courts of the land he has secretly invaded against the express command of the government thereof.

" We are of the opinion that our courts cannot properly assist one who, while unlawfully here, engages in competition with laborers lawfully here in seeking benefits to be obtained only by avoiding the law of the land. Denied the means of collecting for his labor, he will not be likely to succeed in maintaining himself and accomplishing his cheat upon the government. \* \* \* And the circumstances presented by this case show the respondent does not possess the right to demand a hearing in the courts on his claim for wages. In accordance with public policy the courts will refuse to hear him in such a matter."

The facts in the application before this court differ in substantial respects from the facts underlying the ruling by the Wisconsin court. This proceeding is not predicated upon an action for wages but is for injury to the person. It appears to this court that there is a substantial difference between these two bases. While contract rights might be denied to an individual because he has not complied with certain preliminary requirements in order to acquire a certain status in court, nevertheless even the most hopeless outcast is entitled to protection against unlawful injury to his person. In the case of *Janusis* v. *Long*, decided by the Supreme Judicial Court of Massachusetts in November, 1933 (284 Mass.

403; 188 N. E. 228), the facts were that the plaintiff while on the highway was injured as a result of the negligence of the defendant in the operation of an automobile. Among other defenses it was pleaded that at the time of his injuries the plaintiff was illegally in the United States and subject to deportation, that he was a trespasser and that the defendant violated no legal duty owed to him. The first question considered by the learned appellate court was whether the unlawful presence of the plaintiff in this country was a complete bar to the action. A person does not become an outlaw and lose all human rights by doing an illegal act. The court went on to state:

" Aliens unlawfully within the country are subject to the criminal law and may be prosecuted and punished for its infraction according to the law of the land. To that extent they owe allegiance to the laws of the government. * * * It is equally plain that they are entitled to the protection against criminal violence or fraud afforded by the laws established for the security of *human beings*. The plaintiff clearly would be liable to suit in our courts instituted to redress any grievance sustained at his hands by a citizen of this Commonwealth or by an alien in amity and under no special disability. Even alien enemies during a state of war may be subjected to such suits. * * * There is every reason why a person physically present in the Commonwealth should be held answerable in the courts for his tortious conduct. * * * The rule of our decisions is that violation of law is a bar to recovery in an action of tort only in instances where it is a contributing cause to the injury. If it is *a mere condition* and not a directly contributing cause, it is no bar to recovery by the plaintiff who proves the other elements of liability. That was established beyond question for this Commonwealth by the exhaustive and illuminating opinion of the court, with review of many authorities by Chief Justice KNOWLTON in *Bourne* v. *Whitman* (209 Mass. 155, 167, 171). The underlying reason for this class of decisions is that the law does not lend its aid to one whose violation of law is the foundation of his cause of action but that his general character in other particulars of life and conduct, *having no relation* to the cause of action, is too remote to be considered and has no relation to the issues involved. It is plain, if that principle of law governs, that the failure of the plaintiff to comply with the immigration rules and his consequent unlawful presence in the United States were mere conditions and were not causes contributing to his injury.

" In the light of all these principles judicially determined and established, we are of the opinion that the violation of law involved

in the original entrance of the plaintiff into the country does not so taint his subsequent otherwise lawful and peaceful presence as to preclude him from seeking redress in our courts for such injuries sustained by him as are shown on this record."

To the same effect is the case of *Martinez* v. *Fox Valley Bus Lines, Inc.* (17 F. Supp. 576), in which a defense similar to the one offered on this application was stricken out by the court.

But the application before this court limits the power of this court to proceed at this time. While it appears that the proposed defense may be insufficient as a matter of law the rule of this department is that on a motion to amend a pleading the court should not pass upon the merits but allow the party to put his pleadings in such shape as will enable him to raise and have determined by subsequent motion or at the trial any question affecting his interest, unless it is very apparent that there is no merit in the proposed amendment, and it is further apparent that the amendment is proposed for the purpose of delaying the trial. In view of the absence of rulings in New York State on the legal question involved it cannot be said that it is very apparent that there is no merit in the proposed amendment nor can it be said that the purpose appears to be for a delay of the trial. Therefore, the legal insufficiency of the proposed defense in accordance with this opinion may be reserved and raised at a subsequent application in this litigation. Furthermore, an appeal by the defendant from a denial of this application, upon the technical grounds above set forth, might effect a delay of the trial to the detriment of the plaintiff.

The motion is accordingly granted upon condition that the defendant do nothing to delay the trial.