ROBERTO et al. v. HARTFORD FIRE INS. CO.

No. 9707.

United States Court of Appeals Seventh Circuit.

Oct. 27, 1949.

Rehearing Denied Dec. 6, 1949.

C. G. Myers, C. F. Snerly, J. E. Loeb, Chicago, Ill., for appellant.

Maxfield Weisbrod, John B. Schmidt, Chicago, Ill., for appellee.

Before KERNER, DUFFY and LINDLEY, Circuit Judges.

DUFFY, Circuit Judge.

This action was commenced in the Circuit Court of Cook County, Illinois, against several insurance companies including Hartford Fire Insurance Company (hereinafter called "Hartford"). Plaintiffs sought to recover a total of $16,000 under such policies for an alleged fire loss on January 15, 1936, on a two-story brick building in Chicago Heights, Illinois. After removal to the United States District Court the action was dismissed as to all defendants except Hartford, from whom plaintiffs claim $7,000, the face of Hartford's policy. The case was tried to a jury, and this appeal is from a judgment in favor of plaintiffs based upon the jury verdict.

Plaintiff Roberts was born in Italy and became a naturalized American citizen. In his application for citizenship he stated he was unmarried. The government, learning that he had in fact been married when he made the application, prosecuted and convicted him of perjury. While he was serving a prison term, the Department of Labor started deportation proceedings and on July 26, 1933, he was ordered deported. On March 5, 1934, prior to the date of his scheduled departure, Roberto filed a petition for a writ of habeas corpus in the United States District Court for the Southern District of New York. This petition was denied by the district court and such action was affirmed by the Second Circuit appellate court. Meanwhile, on March 29, 1934, Roberto was freed on bail and remained at large until January 1, 1935. Plaintiff petitioned the United States Supreme Court for a writ of certiorari which petition was denied on October 8, 1934, and the mandate of that court was issued on November 9, 1934. Roberto was deported to Italy on January 5, 1935.

During 1934 William H. Donovan, Sr. was the general agent for Hartford in Chicago Heights, a city of about 25,000 population. He conducted his business as the Donovan Agency, and his son, William H. Donovan, Jr., then twenty-four years of age, acted as a clerk and assisted him in the work of the agency. Donovan, Sr. was well acquainted with each plaintiff and had previously handled insurance matters for them. He also had handled the transaction at the time the plaintiffs purchased the property on which the building damaged by fire was situated.

Prior to October 20, 1934, Roberto had spoken to his co-plaintiff, Ammirati, about renewing an insurance policy on the building, and on that date they both went to the Donovan Agency to discuss the matter. William H. Donovan, Jr. conferred with them. However, Ammirati soon departed, leaving Roberto to finish the arrangements and obtain the new policy. There was no written application used, and Donovan Jr. did not ask questions of a personal nature of Roberto. The policy of insurance was shortly thereafter issued and it was signed by William H. Donovan, Sr. as the writing agent. When Roberto was in the office of the Donovan Agency on October 20, 1934, he did not volunteer any information about the prosecution for perjury or the then pending deportation proceedings against him. At the trial Hartford produced William Donovan, Jr. as a witness, who testified that when he was conferring with plaintiffs he had had no knowledge of Roberto's incarceration, although a newspaper of general circulation in Chicago Heights had printed stories both of his conviction in the perjury case in the district court, and the affirmance of that judgment by this court. Donovan Jr. also testified that at the time he had had no knowledge of the deportation proceedings. However, defendant did not produce as a witness William Donovan, Sr., who had a long acquaintance with the plaintiffs, and no reason was given why he was not called.

Defendant alleges as error the action of the trial court in overruling a tendered defense that Roberto, one of the plaintiffs herein, was illegally in this country at the date of the contract, and that he had no right to sue thereon. Defendant relies heavily on Coules v. Pharris, 212 Wis. 558, 250 N.W. 404. In the Coules case, an alien, unlawfully in this country, sued to recover wages. The court, in denying recovery, stressed that at the time the services were rendered plaintiff was unlawfully in this country, contrary to the expressed command of the federal government. We need not pause to consider whether the decision in the Coules case is sound law, except to say that we know of no case which has followed it or cited it with approval. Other courts have reached the contrary conclusion. Janusis v. Long, 284 Mass. 403, 188 N.E. 228; Feldman v. Murray, 171 Misc. 360, 12 N.Y.S.2d 533; Martinez v. Fox Valley Bus Lines, Inc., D.C., 17 F.Supp. 576; Arteaga v. Allen, 5 Cir., 99 F.2d 509. But in any event the facts in the case at bar clearly distinguish it from the Coules case. When the fire insurance contract here under consideration was entered into both plaintiffs were legally in this country. True, Roberto had been ordered deported, but his departure had been held up pending the outcome of his appeal, and the mandate of the United States Supreme Court did not issue until November 9, 1934. On October 20, 1934, when the insurance contract was executed plaintiff Roberto was legally in Chicago Heights. There is no suggestion that plaintiff Ammirati was in this country illegally on said date or any other date.

Conceding that the judgment cancelling Roberto's citizenship was valid at all times after the date of said judgment, and that from said date Roberto was an alien, he was on October 20, 1934, a resident alien, legally in this country. Title 8 U.S.C.A. § 41, provides: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

■ But this section was part of the Civil Rights Act, re-enacted by Congress in 1870 following the adoption of the XIV Amendment in 1868. Although enacted primarily to insure equal civil rights for Negroes, it has been held that the protection of this section extends to aliens as well as to citizens. Takahashi v. Fish and Game Commission, 334 U.S. 410, 68 S.Ct. 1138, 92 L.Ed. 1478.

But defendant argues that at the date of the fire loss and on the date when this action was commenced, Roberto no longer was a resident of this country, and had no right to sue in the courts of this nation. Defendant questions the jurisdiction of the district court to entertain such action.

When this action was commenced the status of Roberto was that of a non-resident alien.[1] Title 28 U.S.C.A. § 41, now Title 28 U.S.C.A. § 1332, provided:

"The district courts shall have orginal jurisdiction as follows:

"(1) * * * Of all suits of a civil nature, at common law or in equity, * * * where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000, and * * * (c) is between citizens of a State and foreign States, citizens, or subjects. * * *"

■ When Roberto joined his co-plaintiff in commencing this action, he was not then in violation of any law of this country. He had paid his debt to society on the perjury charge. He had been deported to Italy and would at least have the status of a subject of that country. We hold that Roberto was within his rights in joining his co-plaintiff in instituting this suit, and that the district court had jurisdiction.

Defendant's main argument, however, is based on its claim that plaintiffs violated the provisions of the insurance policy reading, "This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insur-

ance or the subject thereof; or if the interest of the insured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss." Defendant insists that Roberto concealed the facts that he had been incarcerated, and that he was under an order for deportation. Donovan, Jr. testified he had no knowledge of either fact, and would not have issued the insurance policy if such information had been known to him.

■ We think the correct rule is that where, as here, the insurer fails to question the insured, the latter cannot be said to have concealed facts so as to void the policy unless they are facts which he knows, or which a reasonable man should have known, to be material to the risk and unless he does so for the purpose of obtaining insurance which could not have been obtained after a disclosure of such facts. In Kozlowski v. Pavonia Fire Insurance Co., 116 N.J.L. 194, 183 A. 154, 156, the policy there in question contained a provision almost identical to the section heretofore quoted. The court said:

"While there is authority for the view that the intention is immaterial where the concealment relates to a matter made the subject of a specific inquiry, it seems to be the settled rule that, where no inquiry is made, the concealment must be tainted with a fraudulent intent. * * * 'Mere silence on the part of the assured, especially as to some matter of fact which he does not consider it important for the underwriter to know, is not to be considered as such concealment. * * *'
* * * * * *

"This is an affirmative defense, and the burden of proof is upon him who asserts it. The inquiry is ordinarily one for the jury. * * *"

Other cases holding that the concealment must, in the absence of inquiry, be not only material but fraudulent, are Han-

---

1. Co-plaintiff Ammirati had previously been a naturalized citizen, but his papers were cancelled in 1932 because the City Court of Chicago Heights, which had is-
sued his certificate, did not have the necessary jurisdiction. He again became a naturalized American citizen in 1946.

over Fire Insurance Co. v. Nash, Tex.Civ. App., 67 S.W.2d 452; Glenn Falls Insurance Co. v. Michael, 167 Ind. 659, 74 N.E. 964, 79 N.E. 905, 8 L.R.A.,N.S., 708; Hamburg-Bremen Fire Insurance Co. of Hamburg, Germany v. Ohio Valley Dry Goods Co.'s Trustee, 160 Ky. 252, 169 S.W. 724, Ann.Cas.1916B, 944; Romain v. Twin City Fire Insurance Co., 193 Minn. 1, 258 N.W. 289.

█ It is difficult to conceive that, remaining silent, Roberto had in mind a fraudulent intent to conceal his incarceration because of his false statement in his application for citizenship. The newspaper in this relatively small town twice printed prominent stories on the front page, narrating the facts and results of that offense. While no similar publicity was given to the deportation proceedings, Roberto's own silence does not indicate any fraudulent intent to conceal the facts. Neither of the plaintiffs resided in the building. Roberto's co-plaintiff intended to and did continue to reside in Chicago Heights. Counsel for the defendant does not claim that fire insurance companies will not insure property located in this country when it is partly owned by a nonresident alien. We hold that proof is lacking to show as a matter of law concealment of a material fact by co-plaintiff Roberto as would void the policy.

Defendant next relies upon Roberto's failure to comply with a demand under a clause of its policy requiring him, as one of the assured, to appear and submit to an examination under oath in the office of defendant's attorney in Cook County, Illinois, scheduled twelve days after the date of the service of such notice on one Maurer, alleged to be an agent of Roberto. Plaintiff Ammirati did submit to such an examination, but obviously Roberto could not respond. At the time the demand for examination was made, defendant knew Roberto had been deported and that his attendance at the examination was impossible.

█ A stipulation in a policy for examination of the assured is valid, and a performance thereof a condition precedent for recovery, providing the time and place designated for examination are reasonable. As was said by Justice Brewer in Gross v. St. Paul F. & M. Ins. Co., C.C., 22 F. 74, 75, "* * * The insurer may insist on compliance, and the insured must comply or give a valid excuse therefor." In Firemen's Fund Ins. Co. v. Sims, 115 Ga. 939, 42 S.E. 269, 270, the court said, "Of course, where it is impossible for the insured to comply with this condition, or where the circumstances are such, through no fault of the insured, that he cannot submit to the examination, his failure to do so will not operate to forfeit the policy. See in this connection Phillips v. Protection Insurance Co., 14 Mo. 220. * * *"

█ On this issue we agree with and approve the statement of the trial court herein:

"* * * while Roberto himself was responsible for the acts which brought about the cancellation of his citizenship papers and his deportation to Italy, nevertheless his inability to appear in Cook County for examination under oath is due to the fact that the United States Government will not permit him to come here. He is prevented from carrying out the provisions of his contract by the mandate of the Government, not through his own volition. Under the circumstances it is impossible for him to appear for examination. Here the Insurance Company has had the benefit of his co-plaintiff and the co-owner of the property appearing and being examined under oath.

"I am of the opinion that under all the circumstances Roberto was relieved from appearing in Cook County for examination under oath."

█ Defendant also asserts error because the trial court refused to permit counsel to read to the jury facts from a stipulation which had already been orally admitted at the trial. We have examined this contention, as well as other assignments of error not commented upon, but we find no merit in them.

Judgment affirmed.