**LEAGUE OF ACADEMIC WOMEN**
**et al., Plaintiffs,**

**v.**

**REGENTS OF the UNIVERSITY OF**
**CALIFORNIA et al., Defendants.**

No. C–72–265.

United States District Court,
N. D. California.

May 26, 1972.

Robert L. Gnaizda, Jo Ann Chandler, Public Advocates, Inc., San Francisco, Cal., for plaintiffs.

Thomas J. Cunningham, John E. Landon, Milton H. Gordon, Norman I. Lustig, John F. Lundberg, Berkeley, Cal., for defendants.

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS

RENFREW, District Judge.

### I

The complaint in this action seeks declaratory and injunctive relief against the defendants to prevent them from continuing to discriminate in hiring and employment at the Berkeley campus of the University of California and in the office of the President of the University at University Hall (these two units hereinafter referred to as the "Berkeley complex") on the basis of sex against the named individual plaintiffs and all other women in their respective classes. The complaint also seeks equitable redress for past discriminatory acts of the defendants.

The plaintiffs in this action are the League of Academic Women, twelve individual named plaintiffs, and the class of women which they seek to represent. Named plaintiff League of Academic Women, is a common-law association of women employees and women students at the Berkeley complex. Of the twelve individual named plaintiffs, three are members of the academic staff at the Berkeley complex, one is a former academic employee there, five are currently employed on the nonacademic staff, and three are presently enrolled as graduate students and are potential employees of the University. The class which these named plaintiffs seek to represent is composed of all women presently employed, or employed at some time during the past five years, at the Berkeley complex, and all women qualified for such employment. Named as defendants in this action are the Regents of the University of California, a corporation charged with the administration of the University of California as a public trust (Cal.Constitution, Art. IX, section 9) ; each individual Regent in his official capacity; Albert Bowker, Chancellor for the Berkeley Division of the University of California, sued individually and in his official capacity; and Charles Hitch, President of the University of California, sued individually and in his official capacity.

Plaintiffs attempt to invoke the jurisdiction of this Court to secure the protection and redress the deprivation of rights secured by 42 U.S.C. § 1981, 42 U.S.C. § 1983, the 14th Amendment to the United States Constitution, and sections 1 and 11 of Article I and section 18 of Article XX of the California Constitution. The jurisdiction of this action is predicated upon 28 U.S.C. §§ 1331 and 1343 and 28 U.S.C. §§ 2201 and 2202. The matter is now before this Court on defendants' motion to dismiss the complaint for failure to state a claim

upon which relief can be granted and for lack of jurisdiction.[1]

## II

■ The first cause of action alleged in the complaint is that the policies and practices of defendants deny to plaintiffs and to the class they represent an equal right to make and enforce employment contracts as is enjoyed by white male citizens. Plaintiffs contend that these acts constitute a violation of 42 U.S.C. § 1981.[2] It is well established that section 1981 applies to employment discrimination, and defendants do not dispute this principle. Jones v. Mayer, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968); Waters v. Wisconsin Steel Works of Int'l. Harvester Co., 427 F.2d 476 (7 Cir. 1970); Sanders v. Dobbs Houses, Inc., 431 F.2d 1097 (5 Cir. 1970). However, defendants do dispute the applicability of section 1981 to this case on the grounds that the section applies solely to racial discrimination, and is therefore unavailable to support plaintiffs' charges of sex-based discrimination. Plaintiffs would urge that section 1981 has a much broader scope than racial discrimination, and should be read by this Court to apply to their allegations of sex discrimination in the present case.

As authority for their limited reading of section 1981, defendants rely principally on Georgia v. Rachel, 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966). There, in a discussion of the legislative history of the Civil Rights Act of 1866, Mr. Justice Stewart stated:

"The legislative history of the 1866 Act clearly indicates that Congress intended to protect a limited category of rights, specifically defined in terms of racial equality. As originally proposed in the Senate, § 1 of the bill that became the 1866 Act did not contain the phrase 'as is enjoyed by white citizens'. That phrase was later added in committee in the House, apparently to emphasize the racial character of the rights being protected" (384 U.S. at 791, 86 S.Ct. at 1789).

Plaintiffs' attempt to distinguish *Rachel* as "irrelevant" in that the Court there discussed only section 1 of the Civil Rights Act of 1866 and did not mention section 1981. Plaintiffs do concede that section 1981 is derived in part from section 1 of the Civil Rights Act of 1866. However, plaintiffs argue that section 16 of the 1870 re-enactment of the Civil Rights Act produced a substantial change in the scope of section 1 of the 1866 Act which is now embodied in section 1981. The change referred to is the difference in the language of section 1 of the 1866 Act, which refers to "all persons born in the United States and not subject to any foreign power," and of section 1981, which reads "All persons within the jurisdiction of the United States * * *." From this change in language, plaintiffs conclude that the protection of the statute was extended to persons other than blacks. Plaintiffs further reason that the expansion to include "all persons" means that the statute must be read to allow women a cause of action for deprivation of their rights due to sex discrimination.

■ There is a fatal defect in plaintiffs' line of reasoning. Section 1981 was enacted to protect the rights

---

1. Argument on plaintiffs' motion for a preliminary injunction was heard at the same time that defendants' motion to dismiss was heard. However, the Court has continued that motion pending the results of the Department of Health, Education and Welfare investigation concerning charges of sex discrimination at the Berkeley complex and will not rule upon it at this time.

2. 42 U.S.C. § 1981 provides:

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

of two groups of people—non-whites and non-citizens who were not afforded equal treatment to white citizens. The standard against which the rights of these individuals must be measured is the rights of *white citizens*. The change in language to include "all people" was designed to include non-citizens and persons not born in the United States within the coverage of the Act. The amendment was not so broad as to extend coverage to all rights of all people. The "all persons" language of the statute speaks only to the issue of to which persons the Act applies. It does not purport to delineate the rights accorded those individuals. The standard against which the rights of the protected individuals must be matched remains the rights of white citizens.

■ Plaintiffs urge that unless section 1981 is read to include protection for women against sex-based discrimination, it would be invalid as a denial of women's rights to the equal protection of the laws secured by the Fourteenth Amendment. This argument is based on the hypothesis that the standard Congress envisioned in passing the 1866 Civil Rights Act was the rights enjoyed by white male citizens. Due to the relative disabilities suffered by women as distinguished from men at that stage in our history, plaintiffs contend that unless the standard was one of white male citizens, black males would be relegated to a lesser status than white male citizens. Therefore the statute must be read today to give women the same rights as black people. The problem with this argument is that there is nothing in the history of the Act to suggest that Congress envisioned any sexual differences when it established the white citizen standard. The statute was obviously aimed at racial problems and inequalities relating to both black males and females. It is clear that the guarantees of section 1981 extend equally to males and females within the scope of its protection. Both are assured of the same rights as are enjoyed by white citizens. The statute makes no distinction in granting the rights between males and females. It is a far different thing to say that a statute extends a right to one group while denying it to another, than it is to say that a statute provides the same rights to everyone, but does not extend an additional right to any of them. The Fourteenth Amendment certainly is not a mandate that every statute must be read to outlaw all forms of discrimination. It is within the discretion of Congress to make laws which will apply only to racial discrimination, only to sex discrimination, or to both racial and sex discrimination.

■ It is also difficult to see how a narrow interpretation of section 1981 as prohibiting only racial discrimination would, as plaintiffs contend, "severely impinge upon the efforts of Congress and the courts to eradicate all forms of discrimination in America." That any form of unjust discrimination is abhorrent to the American people is readily conceded by this Court. But this does not mandate a finding that all anti-discrimination statutes enacted by Congress should be expanded to cover any form of discrimination which may appear. Where new forms of discrimination become apparent, and the existing laws are not appropriate to deal with them, the legislature and not the courts has the responsibility and the power to fashion new laws to combat the discrimination.

The only case decided by a Federal Court of Appeals which plaintiffs cite in support of a broad interpretation of section 1981 is Roberto v. Hartford Fire Ins. Co., 177 F.2d 811 (7 Cir. 1949), cert. denied, 339 U.S. 920, 70 S.Ct. 622, 94 L.Ed. 1343 (1950). That case held that the statute's protection extended to aliens as well as to citizens. Roberto, *as an alien,* was extended the same right to make and enforce contracts as is enjoyed by white citizens. While the discrimination held actionable in this case was clearly not racial, it is not inconsistent with this Court's reading of the statute. Roberto was denied rights granted to all persons by section 1981 due to his non-

citizen status. This is exactly the limited situation to which the 1870 amendment, relied upon so heavily by plaintiffs, is directed. The discrimination alleged by plaintiffs is neither the result of racial differences or non-citizen status.

Directly contrary to plaintiffs' position is Agnew v. City of Compton, 239 F.2d 226 (9 Cir. 1957) where the Court stated that 42 U.S.C. § 1981 applied solely to cases of racial discrimination. Finally, while the decisions are obviously not controlling, it is interesting to note that within the first three months of this year three Federal district courts, including the Northern District of California, have ruled that 42 U.S.C. § 1981 does not apply to sex-based discrimination where no racial discrimination has been alleged. Williams v. San Francisco Unified School District (340 F.Supp. 438, N.D.Cal.1972); Braden v. University of Pittsburgh (Civ.No. 71-646, W.D.Pa. Jan. 31, 1972); Fitzgerald v. United Methodist Community Center, 335 F. Supp. 965 (D.Neb.1972). While 42 U.S.C. § 1981 may go somewhat beyond strictly racial discrimination to extend protection to aliens as was the case in *Roberto,* such a situation is not presented here. Accordingly, this Court is without jurisdiction over the first cause of action in this complaint alleging a violation of 42 U.S.C. § 1981, and it is therefore dismissed.

### III

As a second cause of action plaintiffs allege that defendants, under color of state law and by virtue of their official capacity, have denied plaintiffs and the class they represent equal protection of the laws and equal access to public employment in violation of 42 U.S.C. § 1983. Defendants moved to dismiss this cause of action on the grounds that neither the Regental Corporation of the University of California nor the individual defendants named in the complaint are proper defendants under 42 U.S.C. § 1983.[3] As to the defendant Regental Corporation of the University of California,[4] it is clear that this claim is properly advanced under the provisions of 42 U.S.C. § 1983. Defendants' argument that the Regental Corporation is not a proper party defendant under 42 U.S.C. § 1983 is based on a misinterpretation of the Supreme Court's decision in Monroe v. Pape, 365 U.S. 167, 187–192, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), which held that a municipality is not a "person" within the meaning of the statute for purposes of an action for money damages. In Monroe v. Pape, *supra,* an action for *damages* was brought against individual police officers, who were alleged to have wrongfully searched and detained plaintiff and his family, and also against their employer, the City of Chicago. The Supreme Court affirmed a dismissal of the complaint as to the City of Chicago, but reversed as to the individual officers. That action was for money damages, not injunctive or other equitable relief. Defendants in the present case would expand the holding in Monroe v. Pape, *supra,* to bar actions for equitable relief against municipalities or their agencies. Defendants ground their broad reading of *Monroe* on language found in footnote 50 of that opinion, which reads:

"This has been the view of the lower federal courts. Charlton v. City of Hialeah, [5 Cir.] 188 F.2d 421, 423; Hewitt v. City of Jacksonville, [5

---

3. Title 42 U.S.C. section 1983 reads as follows:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

4. There is no dispute that the Regental Corporation is a public agency whose regulations are equivalent to state statutes. Hamilton v. Regents, 293 U.S. 245, 257–258, 55 S.Ct. 197, 79 L.Ed. 343 (1934).

Cir.], 188 F.2d 423, 424; Cobb v. City of Malden, [1 Cir.], 202 F.2d 701, 703; Agnew v. City of Compton, [9 Cir.], 239 F.2d 226, 230; Cuiksa v. City of Mansfield, [6 Cir.], 250 F.2d 700, 703–704. In a few cases in which equitable relief has been sought, a municipality has been named, along with city officials, as defendant where violations of 42 U.S.C. § 1983 [42 U.S.C.A. § 1983], were alleged. See, e. g., Douglas v. City of Jeannette, 319 U.S. 157, [63 S.Ct. 882, 87 L.Ed. 1324]; Holmes v. City of Atlanta, 350 U.S. 879, [76 S.Ct. 141, 100 L.Ed. 776]. The question dealt with in our opinion was not raised in those cases, either by the parties or by the Court. Since we hold that a municipal corporation is not a 'person' within the meaning of § 1983, no inference to the contrary can any longer be drawn from those cases" (365 U.S. 191, n. 50, 81 S.Ct. 486).

The overwhelming weight of authority has adopted the position that the holding in Monroe v. Pape, *supra*, is restricted to actions for damages and that actions will lie against municipalities and their agencies for equitable relief under 42 U.S.C. § 1983. A recent case arising in the Tenth Circuit which is representative of this approach is Dailey v. City of Lawton, Oklahoma, 425 F.2d 1037 (10 Cir. 1970). There plaintiffs brought an action under 42 U.S.C. § 1983 to enjoin the City of Lawton from denying building permits for construction of privately sponsored housing on the grounds of a purported zoning violation. The District Court granted injunctive relief and on appeal the Court of Appeals for the Tenth Circuit confirmed. In denying the City's argument that the case could not be maintained against it, the Court stated:

"The City argues that the action may not be maintained against it be-

cause it is not a person within the purview of 42 U.S.C. § 1983. It relies on Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492, and Egan v. City of Aurora, 365 U.S. 514, 81 S.Ct. 684, 5 L.Ed.2d 741, and like cases which hold that a municipality is not a person within the meaning of § 1983 when the suit is one to recover damages. The instant action seeks equitable relief, not damages" (425 F.2d 1038).

The Court went on to state that it read footnote 50 to the Monroe opinion as differentiating between actions for damages and actions for monetary relief, and as intending no bar to equitable actions for injunctive relief against invasions of a plaintiff's federal constitutional rights by municipal action. For other decisions which support this viewpoint, see Lee v. Board of Regents of State Colleges, 441 F.2d 1257, 1260 (7 Cir. 1971); Butts v. Dallas Independent School District, 436 F.2d 728, 729 (5 Cir. 1971); Harkless v. Sweeney Independent School District, 427 F.2d 319, 323 (5 Cir. 1970); Schnell v. City of Chicago, 407 F.2d 1084 (7 Cir. 1969), Wall v. Stanly County Bd. of Education, 378 F.2d 275 (4 Cir. 1967); Smith v. Bd. of Education of Morrilton School Dist. No. 32, 365 F.2d 770 (8 Cir. 1966); Adams v. City of Park Ridge, 293 F.2d 585 (7 Cir. 1961).[5]

Of even greater significance are two decisions of the United States Supreme Court ordering that appropriate injunctive relief be granted under section 1983 against a municipality and a school district respectively. In Turner v. City of Memphis, 369 U.S. 350, 82 S.Ct. 805, 7 L.Ed.2d 762 (1962) plaintiff brought a class action against the City of Memphis and its tenant seeking to enjoin them from operating segregated eating and restroom facilities at the municipal airport. In a per curiam opinion the Su-

5. The only decision by a Court of Appeals which defendants argue in support of their position is Deane Hill Country Club, Inc. v. City of Knoxville, 379 F.2d 321 (6 Cir. 1967). However, that case is readily distinguishable on its facts and in that the portion of the opinion which discusses the availability of injunctive relief against a municipality under *Monroe* is dicta.

preme Court vacated the District Court decision and remanded with directions to enter a decree granting appropriate injunctive relief. In support of its decision, the Supreme Court cited with approval Holmes v. City of Atlanta, 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 776 (1955), one of the cases referred to in footnote 50 of the *Monroe* case. The *Turner* decision, particularly in light of its reliance on Holmes v. City of Atlanta, *supra,* would seem to vitiate defendants' contention that footnote 50 of Monroe v. Pape, *supra,* declares that section 1983 jurisdiction will not lie against municipalities in actions for injunctive relief.

Similarly, in Tinker v. Des Moines School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), the Supreme Court went directly to the merits of an action brought against a school district under 42 U.S.C. § 1983, without even considering the possibility that the city was not a proper defendant under section 1983. The plaintiffs brought an action seeking both injunctive relief and nominal money damages[6] after they were suspended from school for wearing black arm bands as a Viet Nam war protest. In its opinion the Court cited with approval another case decided under section 1983 in which equitable relief was sought against a school district, Ferrell v. Dallas Independent School District, 392 F.2d 697 (5 Cir. 1968), where the Court had decided the case on the merits with no mention of Monroe v. Pape, *supra.*

While defendants place primary reliance on the *Monroe* case, they also argue that the law in this circuit would preclude the present action. It does not appear, however, that the precise issue presented in this case has been squarely answered in this circuit. Neither Whitner v. Davis, 410 F.2d 24, 29–30 (9 Cir. 1969) nor Williford v. People of California, 352 F.2d 474, 476 (9 Cir. 1965) speaks directly to the point in question as both those cases involved claims for damages as well as equitable relief. Defendants also rely on Sellers v. Regents of University of California, 432 F.2d 493 (9 Cir. 1970) in support of their contention that an action for equitable relief will not lie against the Regents of the University of California under 42 U.S.C. § 1983. That case too involved a prayer for both damages and equitable relief. In addition, defendants are clearly incorrect in asserting that this case "expressly held" that the Regental Corporation was not a person within the meaning of section 1983. That case was decided on other grounds, and the language referred to by defendants is clearly dicta. As the Court there was faced with an action for both damages and equitable relief rather than for equitable relief alone, this Court does not consider it to be binding authority.

The only case relied on by defendants which might arguably suggest that the Court of Appeals for this Circuit has taken the position that actions for equitable relief against a municipality or a state agency will not lie under section 1983 is Clark v. State of Washington, 366 F.2d 678 (9 Cir. 1966). That case involved an action by a disbarred attorney against the State of Washington and the Washington State Bar Association under 42 U.S.C. § 1983. Plaintiff originally sought a decree to vacate the judgment of disbarment, an injunction to restrain defendants from revoking his license to practice law, an order requiring defendants to restore him to the list of active members of the Bar Association, and a judgment for damages in the amount of $12,000 a year during the period of his disbarment. In a footnote, however, the Court of Appeals indicates that: "In this Court, Clark has withdrawn his prayer for damages" (n. 1 at p. 679). No mention is made of what is the effect, if any, of the withdrawal of the damages claim. After holding that

6. In remanding, the Court noted that it had no opinion as to the proper form of relief which could be granted in the case, but no mention was made concerning the propriety of a section 1983 action against a school district.

the District Court did not have jurisdiction over the State of Washington, the Court stated four independent grounds which supported the dismissal order by the District Court against the State Bar Association. One of the four grounds recited was that:

"A state is not a 'person' within the meaning of Rev.Stat. § 1979 (Sires v. Cole, 9 Cir., 320 F.2d 877, 879), and this must likewise be true of the Bar Association, which is an agency of the state" (366 F.2d 681).

However, the scope of this holding is clouded in that Sires v. Cole, 320 F.2d 877 (9 Cir. 1963), relied on by the Court in *Clark* as authority for the proposition that a state is not a "person," was a case involving an action only for damages under section 1983. As the Court in *Clark* did not discuss the issue of the propriety of an action solely for equitable relief under 42 U.S.C. § 1983 as opposed to an action including a prayer for damages, there is no holding in this Circuit on the precise question of whether an action for equitable relief may be brought against a state agency under 42 U.S.C. § 1983.

This uncertainty is further demonstrated by the fact that recent decisions in both the Court of Appeals for the Ninth Circuit and the District Court for the Northern District of California have held that an action for injunctive relief against a city and a city agency under section 1983 were maintainable. In Kelly v. Guinn, Clark County School District, et al. 456 F.2d 100 (9 Cir. 1972), the Court sustained an order of the District Court that the defendant school district come forward with a plan eliminating racial segregation. The case was brought under 42 U.S.C. §§ 1981 and 1983 against individual officials of the Clark County School District and the School District itself. While the Court did not address itself directly to the issue of the propriety of the school district as a defendant in an action for injunctive relief under section 1983, it did not question jurisdiction over the school district and affirmed the District Court's action in ordering the School District to come forward with a plan to eliminate racial segregation.

Hurwitt v. City of Oakland, 247 F. Supp. 995 (N.D.Cal.1965) involved an action against the City of Oakland and its Mayor, Chief of Police, and Acting City Manager under section 1983 seeking an injunction to restrain them from denying plaintiffs a parade permit for a parade associated with a protest against the Government's Vietnamese war policy. Judge Sweigert determined that the Court had jurisdiction under 42 U.S.C. § 1983 and issued the preliminary injunction.

Adding further support to this position is the recent opinion of Judge Harris in Williams v. San Francisco Unified School District, 340 F.Supp. 438 (N.D. Cal.1972). In that case the District Court squarely faced the issue of whether an action for injunctive or other equitable relief against a school board or school district was proper under 42 U.S. C. § 1983. Distinguishing Monroe v. Pape, 365 U.S. 167, 187–192, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) as applying only to actions for money damages, the Court held that an action for equitable relief was proper.

In light of these conflicting authorities, it is clear that as yet this issue has not been spoken on with finality. But the great weight of authority in the other circuits and the clear indication of post-*Monroe* decisions by the United States Supreme Court supports the position of plaintiffs in this case. Therefore this Court concludes that the Regental Corporation is a proper defendant in a suit for equitable relief under 42 U.S.C. § 1983. The holding in Monroe v. Pape, *supra* is limited to the issue of an action seeking money damages and does not bar this action.

Defendants also argue that the individual defendants are not proper parties under 42 U.S.C. § 1983. This claim is predicated on the theory that plaintiffs have not alleged sufficient personal in-

**644**

volvement by these defendants in the discriminatory practices to establish liability. In the aforementioned case of Kelly v. Guinn, *supra*, the Ninth Circuit found that individual members of the school board were proper defendants in a section 1983 action for equitable relief, stating that:

"At the outset we emphasize the individual defendants are sued only in their representative capacity as incumbent officials of the Clark County School District. The policies which we hold violative of the Constitution were initiated and implemented primarily by their predecessors. In the words of the district court:

" 'The present members of the Board may not be personally responsible for the actions of their ancestors in office, but we are concerned with a school district and its policies and actions, and not with the particular people who may have been vested with control from time to time. Quite realistically, the present Board is saddled with the mistakes of its predecessors and is obligated to take effective steps to reverse the segregation trend, however drastic the cure may be' " 456 F. 2d at p. 103.

■ The rationale of this opinion is clearly germane to the situation in the case now before this Court. Both involve charges of discriminatory practices in an educational unit, lodged against the individuals charged with responsibility for the operation of the unit. In the present action against the individual Regents, President Hitch, and Chancellor Bowker, as in the action against individual school board members in *Guinn*, the relief sought is equitable. The concern of plaintiffs is to correct certain discriminatory practices present in the educational unit, the operation of which is entrusted with defendants. Therefore the individual defendants are proper parties to this action under 42 U.S.C. §

1983. See also Lankford v. Gelston, 364 F.2d 197 (4 Cir. 1966); Penn v. Stumpf, 308 F.Supp. 1238 (N.D.Cal. 1970). The District Court cases defendants rely on are not convincing, as they uniformly involve actions for damages. Plaintiffs' claims against these individual defendants under 42 U.S.C. § 1983 are properly before this Court, and the motion to dismiss as to these defendants is denied.

IV

■ Two California Constitutional claims have also been advanced by plaintiffs. In their third cause of action plaintiffs allege that defendants' acts have denied them equal protection of the law guaranteed in Article I, sections 11 and 21 of the California Constitution. The fourth and final cause of action alleged in plaintiffs' complaint is based upon violations by defendants of Article XX, section 18, of the California Constitution, which provides that "a person may not be disqualified because of sex, from entering or pursuing a lawful business, vocation or profession." Defendants are correct in their assertion that under the doctrine of pendent jurisdiction, if the claims arising under Federal law are dismissed by means of a preliminary motion for failure to state a cause of action, the District Court loses jurisdiction over the claims arising under state law. However, as this Court has found that it does have jurisdiction over Federal claims alleged by plaintiff, the State Constitutional claims are therefore properly before this Court under the theory of pendent jurisdiction. United Mine Workers v. Gibbs, 383 U.S. 715, 725–726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

It is therefore ordered that defendants' motion to dismiss is granted as to plaintiffs' first cause of action, a claim for relief under 42 U.S.C. § 1981, and is denied as to all other causes of action alleged in said complaint.