ARTEAGA and others, by their Guardian ad Litem, James P. Samster, Plaintiffs-Appellants, v. LITERSKI, and others, Defendants-Respondents.

*No. 76–629. Argued April 6, 1978.—Decided April 24, 1978.*
(Also reported in 265 N. W. 2d 148.)

For the appellants there were briefs by *Timothy J. Aiken,* and *Panos, Samster & Domnitz,* and oral argument by *Timothy J. Aiken,* all of Milwaukee.

For the respondents there was a brief by *Harrold J. McComas, James R. Clark,* and *Mark G. Petri,* and oral argument by *Mr. Clark,* all of Milwaukee.

DAY, J. This is an appeal from two judgments dismissing the complaint of the plaintiffs-appellants,

Arnesto Arteaga, age eight; Antonia Arteaga, age eleven; America Arteaga, age five and their parents, Pablo and Guadalupe Arteaga (hereafter the Arteagas). The judgment dated March 4, 1977, dismissed the Arteagas' complaint against the defendant, Wisconsin Gas Company (hereafter the gas company). The judgment dated March 16, 1977, dismissed the Arteagas' complaint against defendant Chester Literski (hereafter Mr. Literski) and Literski's insurer, The Travelers Insurance Company (hereafter the insurer).

On August 19, 1976, the Arteagas filed a complaint against the gas company, their landlord, Mr. Literski, and the insurer for damages for loss of earnings, medical and hospital expenses, and severe and disfiguring burn injuries sustained in a gas explosion in the Arteagas' residence. The Arteagas claimed that the explosion was caused by the negligence of the defendants. Literski, by his amended answer, and the gas company, by a motion for summary judgment, contended that the Arteagas lacked the capacity to sue because they were aliens who entered this country illegally. The trial court ruled in favor of the defendants' contention.

The only issue on this appeal is: Do illegal aliens have the right to sue in the courts of Wisconsin for injuries negligently inflicted upon them? We hold that they do.

The parties have stipulated to the facts on this appeal.

At depositions taken of Pablo and Guadalupe Arteaga, the Arteagas testified that each family member was born in Mexico. Pablo Arteaga entered the United States illegally from Mexico in 1970. Guadalupe Arteaga and the three children arrived illegally in the United States from Mexico in October, 1974.

In October, 1974, the Arteaga family moved into a second floor apartment rented from Chester Literski at 2375 South 16th Street, Milwaukee, Wisconsin. Natural gas from the gas company was supplied to the Arteaga apartment as part of the rental agreement.

On November 15, 1974, Pablo Arteaga and his brother carried a gas stove up the stairs to the apartment. They placed it on the floor in the apartment's kitchen and connected it to the house piping which supplied natural gas within the apartment. Shortly thereafter an explosion occurred in the Arteaga apartment. The source of the exploding natural gas was an opening in the internal house piping in the kitchen of the Arteaga apartment.

Following the depositions, the gas company moved for summary judgment and was joined in the motion by Literski and his insurer. The motion sought summary judgment dismissing the Arteagas' complaint on the ground that the Arteagas lacked the capacity to maintain their action because they were illegal aliens. At the hearing on the motion for summary judgment, the Arteagas stipulated that they were illegally within the United States.

Based upon this stipulation, the trial court determined that the Arteagas lacked the capacity to bring a civil action for personal injuries and were barred from maintaining their action in the courts of the State of Wisconsin as a matter of law, relying on this court's decision in *Coules v. Pharris,* 212 Wis. 558, 250 N.W. 404 (1933).

It is well settled that an alien lawfully present in the United States has a right of access to the courts equal to that possessed by citizens. *Johnson v. Eisentrager,* 339 U.S. 763, 771 (1950); *Takahashi v. Fish & Game Comm.,* 334 U.S. 410, 419, 420 (1948); *Lehndorff Geneva, Inc. v. Warren,* 74 Wis.2d 369, 378, 246 N.W.2d 815 (1976); *Roberto v. Hartford Fire Ins. Co.,* 177 F.2d 811, 813, (7th Cir. 1949).

While the United States Supreme Court has not considered whether an alien unlawfully within the country has the capacity or right to sue for civil wrongs, other state courts and lower federal courts who have considered

the question have held that the illegal alien has the capacity to sue. Limitations upon aliens' legal and procedural capacity have virtually disappeared. Ehrenzweig, *A Treatise on the Conflict of Laws*, §13 (1962); 3 Am. Jur. *2d, Aliens and Citizens*, secs. 43–46 (1962).

The only exception is this court's decision in *Coules v. Pharris, supra*. In the opinion in *Coules*, this court declined "in accordance with public policy" to permit an alien to sue for wages earned while he was unlawfully here engaged in competition with laborers lawfully here. This court stated that under the "circumstances presented by this case," the courts would refuse to hear the alien and decline to permit his suit as a matter of right under the Fourteenth Amendment. The court stated that "the right of an alien to sue is more a matter of comity than a matter of right." *Coules*, 212 Wis. at 560.

The soundness of the *Coules* decision was questioned from an early date. Lambert, *Contracts*, 10 Wis. L. Rev. 26 (1934). The decision has been noted by commentators who cite it as standing alone for the proposition that an alien's illegal status strips him of standing to maintain a suit. See Ehrenzweig, *supra;* Munoz, *The Right of an Illegal Alien to Maintain a Civil Action*, 63 Cal. L. Rev. 762, 763 (1975).

In *Roberto v. Hartford Fire Ins. Co.*, 177 F.2d 811, 813 (7th Cir. 1949) the court stated,

". . . We need not pause to consider whether the decision in the *Coules* case is sound law, except to say that we know of no case which has followed it or cited it with approval. Other courts have reached the contrary conclusion. *Janusis v. Long*, 284 Mass. 403, 188 N.E. 228; *Feldman v. Murray*, 171 Misc. 360, 12 N.Y.S.2d 533; *Martinez v. Fox Valley Bus Lines, Inc.*, D.C., 17 F. Supp. 576; *Arteaga v. Allen*, 5 Cir., 99 F.2d 509."

In *Coules* the rationale used to refuse illegal aliens access to the courts was that such a policy would protect workers, legally within the country, from competition from illegal aliens. The result in *Coules* could just as well

have the opposite result. In *Gates v. Rivers,* 515 P.2d 1020 (Alaska, 1975) the court allowed a Canadian alien to recover on an employment contract entered into without the permission of immigration authorities. The court stated,

". . . since the purpose of this section would appear to be the safeguarding of American labor from unwanted competition, the appellant's contract should be enforced because such an objective would not be furthered by permitting employers knowingly to employ excludable aliens and then, with impunity, to refuse to pay them for their services. Indeed, to so hold could well have the opposite effect from the one intended, by encouraging employers to enter into the very type of contracts sought to be prevented." *Gates* at 1022.

However, in this case the illegal aliens are claiming compensation for personal injuries and not wages. But, again, if the policy is to discourage illegal immigration, that policy is not furthered by refusing aliens access to the courts. It cannot be seriously argued that people enter this country illegally so they can recover for an injury that will be inflicted upon them later. Moreover, landlords will not be discouraged from providing housing for aliens they know to be here illegally if the landlords can negligently injure the aliens and bear no responsibility for their negligence.

There is no public policy that is served by refusing access to our courts to illegal aliens who are injured through the negligence of another. The sources of our basic concepts of justice between people is that there should be even handed justice meted out to all.

"Ye shall have one manner of law, as well for the stranger as for one of your own country." Leviticus 24:22.

Our Wisconsin Constitution, Article I, section 9 provides:

*"Remedy For Wrongs.* Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, comformably to the laws."

Our law permits recovery for injuries negligently inflicted on one's person. The Constitution says *every person,* it does not limit its protection to citizens or aliens lawfully admitted.

We hold that illegal aliens have the right to sue in the courts of the State of Wisconsin for personal injuries negligently inflicted upon them. To the extent that *Coules* may be interpreted as holding that illegal aliens have no access to the courts, it is overruled.

*By the Court.*—Judgments reversed and cause remanded for further proceedings not inconsistent with this opinion.