168 N.J. Super. 100 (1979)
401 A.2d 1102
AURELIO MONTOYA, PLAINTIFF-RESPONDENT,
v.
GATEWAY INSURANCE COMPANY AND THE NEW JERSEY PROPERTY LIABILITY INSURANCE GUARANTY ASSOCIATION, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Submitted April 2, 1979.
Decided May 7, 1979.
*102 Before Judges FRITZ, BISCHOFF and MORGAN.
Messrs. Soriano, Henkel, Stein & Gaydos, attorneys for appellants (Mr. Thomas W. Matthews on the brief).
Mr. Ned Kirsch, attorney for respondent (Mr. Terry L. Shapiro, of counsel and on the brief).
The opinion of the court was delivered by MORGAN, J.A.D.
Does an illegal alien enjoy access to our courts and if so, does his illegal status bar him from enforcing the personal injury protection portions of his automobile liability policy? These issues, presented for our resolution, will be considered in the following factual and procedural context.
Plaintiff entered this country on November 6, 1971 as a "visitor for pleasure." His status thereafter is in some doubt, evidence regarding any subsequent arrangements for his presence in this country being totally absent from the record. Because the trial judge, however, viewed plaintiff's status as irrelevant to the issues, the legality vel non of his presence here was never adjudicated. In fact, the matter was decided on the assumption that plaintiff was, at all pertinent times, an illegal alien. Soon after his arrival in this country plaintiff secured employment. His first two jobs were of *103 brief duration. He worked at the third job for over a year, earning in excess of $125 a week, and was so employed on December 21, 1973 when he was seriously injured in an automobile accident.
There was in full force and effect on the date of his accident a policy of automobile liability insurance issued by defendant Gateway Insurance Company covering him, as named insured, not only for any liability imposed on him but for mandatory personal injury protection as well. Defendant Gateway, and its successor, The New Jersey Property Liability Insurance Guaranty Association, admit issuance of the policy and that it provided coverage on the date in question. The trial judge found, without there being substantial dispute, that Gateway paid all of plaintiff's medical and hospital expenses incurred up to October 8, 1974 and income continuation benefits in the amount of $823. Further payments on account of income were refused, as were all medical bills incurred after plaintiff returned to his native Colombia, South America.
Plaintiff brought suit for the benefits denied. Defendants have taken the position that they bear no liability on the policy because plaintiff's status as an illegal alien bars his recovery. In addition, they contend, in defense of this suit, that plaintiff's status deprives him of access to the courts. Both contentions were rejected by the trial judge, who granted plaintiff's motion for summary judgment for $6,074 representing unpaid medical bills, $15,412.82 for income continuation,[1] which sum includes statutory interest, $469.50 costs and $2,750 counsel fees. Defendants appeal.
Although New Jersey has not had occasion to address the issue and the United States Supreme Court has made no pronouncement thereon, a well established body of law holds that illegal aliens have rights of access to the courts and *104 are eligible to sue therein to enforce contracts and redress civil wrongs such as negligently inflicted personal injuries. Arteaga v. Literski, 83 Wis.2d 128, 265 N.W.2d 148, 149 (Sup.Ct. 1978); Torres v. Sierra, 90 N.M. 8, 89 N.M. 441, 553 P.2d 721, 724 (Ct.App. 1976), cert. den. 558 P.2d 620 (Sup. Ct. 1976); Commercial Standard Fire and Marine Co. v. Galindo, 484 S.W.2d 635, 637 (Tex. Ct. App. 1972); Martinez v. Fox Valley Bus Lines, 17 F. Supp. 576, 577 (N.D. Ill. 1936). These holdings are premised on the Fifth and Fourteenth Amendments to the United States Constitution, both of which use the word "person," not "citizen," to describe the beneficiaries of the described rights and receive further support from congressional recognition in 42 U.S.C.A. § 1981 in the following language:
All persons within the jurisdiction of the United States shall have the same right * * * to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings. * * *.
The public policy of discouraging illegal immigration will not be subverted by according such aliens access to our courts. It cannot be supposed that anyone illegally enters this country for the purpose of initiating litigation. Indeed, forbidding aliens access to the courts may have precisely the reverse effect. Potential employers may well be encouraged to employ such aliens if they become aware of the alien's inability to lodge claims against them for wages or on account of injuries sustained. See Gates v. Rivers, 515 P.2d 1020 (Alaska Sup. Ct. 1973). Insurance companies may well be encouraged to insure them in anticipation of being able to renege with impunity after a covered loss has occurred. In any event, we have been unable to uncover any existing authority depriving an illegal alien of access to the courts.[2] *105 We see no reason to conclude otherwise and therefore hold that plaintiff has standing to bring the present action.
Plaintiff's standing to maintain this suit is not, however, dispositive. We must determine whether the summary judgments entered were substantively justified. Plaintiff's suit sounds in contract. He contends that defendants' policy of no-fault insurance, admittedly in effect on the date of the accident, affords him coverage with respect to medical bills incurred and with respect to income continuation benefits. With respect to its liability on its policy for plaintiff's medical bills (see N.J.S.A. 39:6A-4(a)), defendants' only contention is that plaintiff's illegal immigrant status absolves it from the responsibility it would otherwise be required to fulfill. Nothing in this policy, however, suggests even remotely that the insured's right to reimbursement for medical bills incurred as the result of the covered accident are conditioned on the legality of his presence in this country and state. Defendants point to no such provision. Rather, they seek to have us imply such a condition based upon some obscure considerations of public policy. Enjoined as we are to construe this policy liberally in fulfillment of an insured's legitimate expectations, we are not at liberty to read into this otherwise clear policy a condition not specified therein. N.J.S.A. 39:6A-16. Defendant Gateway issued the policy and accepted from plaintiff a premium to assume the described risks; neither it, nor its successor, can, we conclude, be now heard to urge absolution from liability for medical expenses by the fortuity that plaintiff's presence in this country was not authorized by law.
With respect to plaintiff's claim for income continuation benefits, defendants contend that plaintiff's illegal status renders his employment illegal. Accordingly, it is urged, plaintiff was not in an "occupational status," an express condition to eligibility for such benefits. See N.J.S.A. 39:6A-2(d) and 4(b).
The policy in question, as required by N.J.S.A. 39:6A-4(b), commits defendants to the "payment of the loss of income *106 of an income producer as a result of bodily injury disability." No contention is made that plaintiff's inability to work following the accident resulted from causes unconnected therewith. Hence, one of the conditions to liability on this clause is satisfied. The term "income producer" is defined as "a person, who at the time of the accident causing personal injury or death, was in an occupational status, earning or producing income." N.J.S.A. 39:6A-2(d). The question posed is whether an illegal alien, not permitted by law to engage in gainful employment,[3] can nevertheless be said to be "in an occupational status" when he does so in violation of the law. In this connection we distinguish between work which, in and of itself, violates law and work which, although lawful, is engaged in by a person under a disability to do it. The former situation encompasses illegal work, such as bookmaking and all other types of criminal conduct. No one would be heard to contend that his "work" of accepting illegal bets on football games was made impossible by an accident rendering him eligible for income continuation benefits. One doing such work is not in an occupational status within the meaning of the policy of the statute which mandates inclusion of such a clause. Plaintiff, however, did not do that kind of work. His job was legal, although he was forbidden by law to do it. With respect to that kind of illegality, nothing in this contract of insurance suggests that the insured must be legally authorized to engage in this otherwise legal work in order to qualify as an income producer.
Although examples do not abound, they do exist. For example, a minor, without working papers, not authorized by law to engage in certain occupations would still qualify as an income producer had he nonetheless engaged in the work he was forbidden by law to do, and had injuries incurred *107 in an automobile accident prevented him from continuing to do so. See N.J.S.A. 34:2-21.1 et seq. Nothing in this policy suggests a different conclusion. So in this case, plaintiff, working at a lawful occupation, earning a salary for well over a year with the same employer, must be viewed as having been in an occupational status when doing so. That would clearly have been so had he been in this country legally. His illegal presence and his disability from engaging in gainful pursuits cannot, consistent with the plain and ordinary meaning of the policy language, be held to deprive him of occupational status.
Defendants' analogy to cases decided in the unemployment compensation context is faulty. In Pinilla v. Board of Review, 155 N.J. Super. 307 (App. Div. 1978), a Colombia native's visa expired in 1973 and she was advised by the immigration authorities to return home. She remained and worked in New Jersey until 1976 when she was apprehended and thereafter released pending a deportation hearing. Her employer fired her and she filed a claim for unemployment compensation benefits. The claim was denied on the ground that she was legally disabled from working, thereby rendering her unable to, or unavailable for, work within the meaning of the Unemployment Compensation Law.
Since appellant could not lawfully seek or engage in gainful employment in this country when she applied for unemployment benefits, the agency below properly ruled that she was ineligible for such benefits by virtue of N.J.S.A. 43:21-4(c). In our view, legal inability to work is as disqualifying as physical inability to work. [155 N.J. Super. at 311]
Accord, Bastas v. Board of Review, 155 N.J. Super. 312, 315-316 (App. Div. 1978).
Reasons given for denying illegal aliens unemployment compensation include the refusal to subsidize their continued and illegal presence in this country and subversion of the federal law forbidding their presence here. See Alonso v. State, 50 Cal. App.3d 242, 123 Cal. Rptr. 536, 543-544 *108 (D. Ct. App. 1975), cert. den. 425 U.S. 903, 96 S.Ct. 1492, 47 L.Ed.2d 752 (1976). Also implicated under New Jersey law is the continued availability of the applicant for employment as a condition to eligibility for such benefits.
This matter is clearly distinguishable. Plaintiff's rights arise under a private contract, not under statutory law. The fact that legislation describes the minimum contents of the insurance contract does not, in our view, convert that private contract into public law. Should defendants be held liable on the policy, the State would not be subsidizing and indeed aiding the alien to continue his illegal presence in this country. Rather, an insurance company compensated for the risks it described and assumed would be paying in accord with its agreement. Moreover, in order to be eligible for income continuation benefits, plaintiff is not required to hold himself available for work. Indeed, his eligibility depends upon his not being able to work. Payment of such benefits will not undermine federal law regarding illegal immigrants because it does not encourage, or indeed require, the immigrants' continued presence in this country.
There is no question but that an illegal alien is eligible at common law to sue in our courts for personal injury sustained and to recover as an element of his damage loss of earnings caused by the tortfeasor's negligence. Arteaga v. Literski, supra; Commercial Standard Fire and Marine Co. v. Galindo, 484 S.W. 2d at 637 (recovery of worker's compensation benefits allowed). It would be anomalous indeed for us to hold that the statutory partial substitute for that common law action, designed to insure prompt payment of reparations, including income loss, results in denying a victim that which he could have obtained in the common law action.
Affirmed.
NOTES
[1] Defendants do not dispute the amount of the award, and although the extent of their liability has not been stipulated, we assume plaintiff purchased extended coverage. N.J.S.A. 39:6A-10.
[2] Coules v. Pharris, 212 Wis. 558, 250 N.W. 404 (Sup. Ct. 1933), did so hold, forbidding the alien from suing for wages earned; Coules was soundly criticized and ultimately overruled by Arteaga v. Literski, supra.
[3] Ojeda-Vinales v. Immigration & Naturalization Serv., 523 F.2d 286 (2 Cir.1975).