288 N.J. Super. 240 (1996)
672 A.2d 221
LUIS CASTRO MENDOZA, PETITIONER-APPELLANT,
v.
MONMOUTH RECYCLING CORPORATION (CORRECT RESPONDENT BEING QUALITY LABOR SERVICES), RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted January 23, 1996.
Decided March 7, 1996.
*242 Before Judges PRESSLER, KEEFE and A.A. RODRIGUEZ.
Victor M. Covelli, attorney for appellant.
Staehle & DeSanto, attorneys for respondent (Steven J. Currenti, on the brief).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
The question raised by this appeal is whether an illegal alien who is injured on the job is entitled to workers' compensation benefits even if he is not authorized by law to work. The judge of workers' compensation dismissed the claim petition on the ground that workers' compensation benefits are not available to an illegal alien. We disagree and consequently reverse and remand.
*243 Insofar as we can determine from this rather sparse record, petitioner Luis Castro Mendoza entered the United States from Mexico some time in 1988. The facts surrounding his entry were never really established. Petitioner testified through an interpreter, and his illegal status was apparently regarded by the judge as proved by petitioner's own testimony. Although he conceded on cross-examination that he had entered the United States as an illegal alien, he also asserted that he had a one-year work permit when he arrived and that he had intended to return to Mexico when his permit expired. He did not do so, he claimed, because of the injury he sustained in August 1989 which is the subject of this claim petition. The inconsistencies and ambiguities in petitioner's testimony were not resolved. Nor was the date of his entry into the United States proved. Thus, had he entered in or after August 1988 with a work permit good for a year, it may well be that at the time of his injury in 1989 he was not working illegally. Since we are persuaded, however, that the legality of petitioner's status makes no difference to his workers' compensation rights, we assume for purposes of this disposition that he was an illegal alien on the date of the injury. We see no useful purpose to be served by a remand at this juncture for a status determination to be made particularly since the proofs may be elusive.
In any event, in August 1989 petitioner was working, at a compensation of $6 per hour, on an assembly line at the Monmouth Recycling Center. As we understand the record, his employer was actually Quality Labor Services, who, we surmise, supplied workers to this and other sites. Petitioner caught his right hand in a conveyor belt, sustaining a serious injury to the hand requiring four surgeries and then amputation of his little finger. Respondent initially admitted that petitioner was in its employ and that the injury was work-related. Accordingly, it provided medical and temporary disability benefits.
Prior to any determination having been made of the extent of petitioner's ensuing permanent disability, a dispute developed between the parties respecting temporary disability. Several *244 years after the injury, petitioner consulted a psychiatrist who diagnosed petitioner's problems as post-traumatic stress disorder and severe depression attributable to the accident. Petitioner moved for medical benefits in order to continue treatment with the psychiatrist and for an extension of temporary benefits during the period of treatment, estimated by the psychiatrist as a likely period of eight to twelve weeks. It was during the course of that hearing that petitioner's alien status first came up  apparently, he had discussed it with the psychiatrist. Despite the employer's obligations under the Immigration Reform and Control Act, 8 U.S.C.A. § 1324a(a)-(h) (West 1995), to ascertain the work-authorization status of all employees, respondent had assertedly not been earlier aware that petitioner was an illegal alien, if, indeed, he was at the time of the hire. In any event, respondent then moved for dismissal of the claim petition on the illegal-alien ground, and the motion was granted.
The compensation judge's rationale in dismissing the petition relied first on that provision of the unemployment compensation law, N.J.S.A. 43:21-4(i)(1), barring the grant of benefits to an illegal, undocumented alien who is neither authorized to work nor awaiting pending work-authorization. See Brambila v. Board of Review, 124 N.J. 425, 591 A.2d 605 (1991). The judge then pointed to a forty-year-old opinion of this court, Felice v. Felice, 34 N.J. Super. 388, 112 A.2d 581 (App.Div. 1955), which struggled with the issue of whether an injured employee of a partnership who was married to one of the partners was barred by reason of the marital relationship from seeking unemployment compensation from the partnership. Rejecting earlier authority to the contrary, Justice (then Judge) Francis relied in Felice on the growing recognition of a partnership's status as a separate jural entity, thus placing it beyond the bar of interspousal litigation. As illustrative of that partnership status, Justice Francis noted that for purposes of taxation under the Unemployment Compensation Act, a partnership is treated as a separate entity. In this context, namely the susceptibility of a partnership to an employee's claim for statutory benefits, Justice Francis observed that "the social *245 purposes which inspired the workmen's compensation and unemployment compensation legislation are identical." Id. at 392, 112 A.2d 581. Taking that observation completely out of context and seizing upon it as an analogical vehicle, the compensation judge concluded that since an illegal alien cannot qualify for unemployment compensation benefits, then he also cannot qualify for workers' compensation benefits.
We regard the analytical flaw in this syllogistic reasoning as evident. Obviously the Workers' Compensation Act and the Unemployment Compensation Act are both remedial social statutes designed to alleviate the financial burdens suffered by employees whose working lives have been interrupted. But their mechanisms, funding, and underlying premises are very different. The fact that unemployment compensation is not available to an illegal alien does not, by itself, answer the question of whether or not workers' compensation is. We are, moreover, satisfied that the rationale for withholding unemployment compensation from an illegal alien does not implicate the workers' compensation system. We are also persuaded that the purpose, policy and mechanism of the workers' compensation scheme are entirely consistent with the availability of benefits to illegal aliens illegally employed who are injured on the job.
We consider first the Unemployment Compensation Act. As made clear by Brambila, supra, that Act, unlike this state's workers' compensation legislation, expressly addresses the qualification of aliens. Thus N.J.S.A. 43:21-4(i)(1) prohibits benefits to be paid "on the basis of services performed by an alien unless such alien is an individual who was lawfully admitted for permanent residence at the time the services were performed and was lawfully present for the purpose of performing the services or otherwise was permanently residing in the United States under color of law at the time the services were performed." Aside from the express mandate of that provision, the claimant's availability for work has always been a prerequisite for eligibility for unemployment compensation. N.J.S.A. 43:21-4(c)(1). See, e.g., Krauss *246 v. A. & M. Karagheusian, 13 N.J. 447, 457-458, 100 A.2d 277 (1953); Vasquez v. Bd. of Review, Labor and Ind., 127 N.J. Super. 431, 434, 317 A.2d 744 (App.Div.), certif. denied, 65 N.J. 559, 325 A.2d 693 (1974). That condition is at the heart of the structure of the unemployment compensation scheme  that is, that when the employee's separation from the labor market is both involuntary and temporary, society bears the burden, by the unemployment tax system, of alleviating the employee's hardship until a new job is found. Since an illegal alien is prohibited by law from accepting a new job, that person must be deemed unavailable for work, thus not temporarily unemployed and therefore not qualified for unemployment compensation.
Workers' compensation, however, rests upon quite different predicates. The conceptual basis of the workers' compensation system is the substitution of the statutory remedy for a common-law right of action, the statutory remedy becoming an integral component of the contract of employment. See Dudley v. Victor Lynn Lines, Inc., 32 N.J. 479, 488-489, 161 A.2d 479 (1960). Moreover, unlike the unemployment compensation system, the focus of workers' compensation is not the primarily prospective one of seeing a worker through a temporary period of unemployment. Its crux, rather, is the compensation of a worker who is already injured on the job both for the time lost from work because of the injury and for the disabling effect of the injury on future earning capacity. See Medwick v. Bd. of Review, Div. Empl. Sec., 69 N.J. Super. 338, 340-341, 174 A.2d 251 (App.Div. 1961). In this state the workers' compensation system, unlike the unemployment compensation system, is not governmentally funded.[1] Rather, it is primarily paid for by employers through their insurance premiums or self-insurance funds and the costs passed on to consumers. See Romanny v. Stanley Baldino Const. Co., 142 N.J. 576, 580-581, 667 A.2d 349 (1995). Thus, as explained by *247 Judge Conford in his dissenting opinion in Marcus v. Eastern Agricultural Ass'n, Inc., 58 N.J. Super. 584, 596, 157 A.2d 3 (App.Div. 1959), rev'd on dissent, 32 N.J. 460, 161 A.2d 247 (1960), the purpose of workers' compensation is not only to provide a prompt monetary remedy for workers injured in the course of their employment, but also to do so by a system in which the cost of industrial accidents is borne by the consumer as part of the cost of the product or service. See also Livingstone v. Abraham & Straus, Inc., 111 N.J. 89, 94-95, 543 A.2d 45 (1988); Lefkin v. Venturini, 229 N.J. Super. 1, 10-11, 550 A.2d 985 (App.Div. 1988). The private-sector responsibility for payment of workers' compensation also serves the significant public purpose of encouraging employers to take steps to advance and promote workplace safety. Eger v. E.I. Du Pont DeNemours Co., 110 N.J. 133, 140, 539 A.2d 1213 (1988); Stephenson v. R.A. Jones & Co., Inc., 103 N.J. 194, 217, 510 A.2d 1161 (1986) (Stein, J., dissenting).
We think it plain that none of these predicates is in the least degree compromised by the eligibility of an injured illegal alien for workers' compensation. Surely, the effect on the worker of his injury has nothing to do with his citizenship or immigration status. If his capacity to work has been diminished, that disability will continue whether his future employment is in this country or elsewhere. Moreover, his need for medical treatment and his right thereto as an incident of his employment do not derive from or depend upon his immigration status. They are, rather, a function of work he has actually performed during the course of which he sustained an injury.
We also regard the desideratum of workplace safety enhanced by according workers' compensation benefits to an illegal alien since an employer's immunity from payment of compensation to that class of employees might well provide a disincentive to assuring workplace safety. Moreover, such an immunity from accountability might well have the further undesirable effect of encouraging employers to hire illegal aliens in contravention of the provisions and policies of the Immigration Reform and Control Act. See Montoya v. Gateway Insurance Company, 168 N.J. Super. 100, 104, 401 A.2d 1102 (App.Div. 1979).
*248 There are, however, even more fundamental reasons, in the absence of an express statutory bar, for according illegal aliens the benefit of the workers' compensation laws. To begin with, as we explained in Montoya, id. at 103-104, 401 A.2d 1102, "a well established body of law holds that illegal aliens have rights of access to the courts and are eligible to sue therein to enforce contracts and redress civil wrongs such as negligently inflicted personal injuries." We fully subscribe to that proposition. As we have pointed out, workers' compensation rests upon both contract and tort principles  the contract right in effect substitutes for the tort right an employee would otherwise have. It would not only be illogical but it would also serve no discernible public purpose to accord illegal aliens the right to bring affirmative claims in tort for personal injury but to deny them the right to pursue the substitutionary remedy for personal injuries sustained in the workplace, particularly since, in the end, the right to workers' compensation is as much an incident of the employment as the right to receive salary, and has been earned once the labor has been performed. In short, we are in full accord with the holding in Montoya which recognized that in respect of illegal aliens, the sui generis nature of unemployment compensation and the considerations uniquely relevant to its administration are not transferrable to or in any way applicable to the alien's right to prosecute personal injury claims. And workers' compensation is, in the end, a personal-injury remedy.
For the reasons we have herein expressed, we also disagree with the compensation judge's perception that workers' compensation must be denied to an illegal alien because his contract of employment is illegal pursuant to federal law. First, as we have noted, a rule of law denying workers' compensation to an illegal alien is more likely to encourage than to deter employers in employing illegal aliens. Such a rule would therefore disserve the public policy expressed by federal law. Beyond that, as we held in Montoya, id. at 106, 401 A.2d 1102, in the context of an illegal alien's right to income protection benefits under personal *249 injury protection coverage, a distinction must be drawn between "work which, in and of itself, violates law and work which, although lawful, is engaged in by a person under a disability to do it." We concluded there that as a matter of fundamental fairness, the disability under which an illegal alien nevertheless works does not justify withholding from him the privately funded benefits to which his labor would otherwise entitle him. We see no essential difference in this respect between income continuation benefits under a PIP policy and workers' compensation benefits under an employer-funded insurance program.
Finally, we note that other states that have considered this issue in the absence of an "availability for work" requirement in their workers' compensation statutes have uniformly afforded illegal aliens a compensation right. See Gene's Harvesting v. Rodriguez, 421 So.2d 701 (Fla. Dist. Ct. App. 1982); Commercial Standard Fire & Marine Co. v. Galindo, 484 S.W.2d 635 (Tex.Civ.App. 1972); Testa v. Sorrento Restaurant, Inc., 10 A.D.2d 133, 197 N.Y.S.2d 560 (N.Y. App. Div. 1960); see also Bateman, Annotation, Validity, Construction, and Application of Workers' Compensation Provisions Relating to Nonresident Alien Dependents, 28 A.L.R. 5th 547 (1995). We also note that this view is generally supported by legal scholars as well. See Reich, Environmental Metaphor in the Alien Benefits Debate, 42 UCLA L.Rev. 1577, 1593 (1995); Reich, Public Benefits for Undocumented Aliens: State Law Into the Breach Once More, 21 N.M.L.Rev. 219, 239-241 (1991). See also Bosniak, Exclusion and Membership: The Dual Identity of the Undocumented Worker Under United States Law, 1988 Wis. L.Rev. 955, 978, 1033-1035 (1988); but see Miele, Note, Illegal Aliens and Workers' Compensation: The Aftermath of Sure-Tan and IRCA, 7 Hofstra Lab.L.J. 393, 405-408, 412-413 (1990) (arguing that eligibility of illegal aliens for workers' compensation benefits conflicts with IRCA's policy of discouraging the employment of undocumented aliens).
The order dismissing the claim petition is reversed and we remand for further proceedings on the merits.
NOTES
[1] As explained by Brambila, supra, 124 N.J. at 431-432, 591 A.2d 605, the unemployment compensation system is funded both by taxes on employers and federal and state grants.