## The REINFORCED EARTH COMPANY, Petitioner,

v.

## WORKERS' COMPENSATION APPEAL BOARD (ASTUDILLO), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 3, 2000.

Decided April 12, 2000.

Patrick R. Byrne, Plymouth Meeting, for petitioner.

John J. Stanzione, Exton, for respondent.

Before PELLEGRINI, J., FLAHERTY, J., and McCLOSKEY, Senior Judge.

PELLEGRINI, Judge.

The Reinforced Earth Company and State Workers' Insurance Fund (collectively, Employer) petition for review of the Workers' Compensation Appeal Board's (Board) order of September 29, 1999, affirming the Workers' Compensation Judge's (WCJ) award of workers' compensation benefits to Juan Carlos S. Astudillo (Claimant) who declined to hold that because Claimant was an illegal alien, he was not entitled to workers' compensation benefits.

The pertinent facts as found by the WCJ are as follows. Claimant was an illegal alien and did not have proper Immigration and Naturalization Service documentation to work for Employer. On May

20, 1994, Claimant sustained injury to his head, neck, shoulders and upper back while employed as a maintenance worker for Employer when he was struck by a heavy steel beam. Claimant suffered a concussion with a mild head injury, contusion and abrasion of the left upper arm, an acute cervical and lumbo-sacral strain and sprain caused by the work injury, and continued to be disabled and unable to perform the duties of his pre-injury position. However, he could return to work if it did not involve climbing on scaffolds or ladders due to a risk of falling and with a lifting restriction of less than 20 to 25 pounds.

Even though Claimant was an illegal alien and correspondingly did not have proper Immigration and Naturalization Service documentation to work for Employer, the WCJ held that Claimant was not barred from relief under the Pennsylvania Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4; 2501–2626. Employer appealed the WCJ's decision to the Board, contending that Claimant was not entitled to workers' compensation benefits due to his illegal alien status, and because it would be deprived of its statutory remedy of returning Claimant to suitable work even if Claimant's status did not alone preclude him from receiving benefits. The Board affirmed the WCJ's decision that Claimant's illegal alien status did not bar him from recovery pursuant to the Act. This appeal followed.[1]

**I.**

On appeal, Employer again contends that Claimant is not entitled to workers' compensation benefits because he is an illegal alien. Under the Act, to establish entitlement to benefits, a claimant must normally establish an employment relationship during which an injury arose in

1. Our scope of review of a decision of the Board is limited to a determination of whether constitutional rights were violated, whether errors of law were committed, or whether the necessary findings of fact were supported by substantial evidence. *Pruitt v. Workers' Compensation Appeal Board (Lighthouse Rehabilitation),* 730 A.2d 1025 (Pa.Cmwlth.1999).

the course of employment, and that such injury is related to the employment. Section 301(c)(1), 77 P.S. § 411(1). "Employee" as defined by the Act includes any natural person who performs services for another for a valuable consideration.[2] The only individuals that the Act specifically excludes are persons whose employment is casual in nature and those considered independent contractors from the definition of an employee entitled to benefits.

■ Employer contends that the Immigration Reform and Control Act of 1986, 8 U.S.C. § 1324a (IRCA,), under which illegal aliens are prohibited from being employed in the United States, preempts the Act and requires Pennsylvania courts to find that Claimant was not an "employee" under the Act, and, therefore, was not entitled to workers' compensation benefits. We disagree because the IRCA was enacted to prohibit employers from hiring individuals who were illegal aliens and places the burden on employers to obtain documentation that the prospective employee is legally in this country and can legally seek employment. *See* 8 U.S.C. § 1324a. It was hoped that requiring documentation would provide an impediment to decisions by individuals to illegally immigrate to this country, but there is nothing in the IRCA which indicates that an individual, hired by an employer in violation of its provisions, is not an "employee" under federal or state law. As such, the IRCA does not, in and of itself, preclude an illegal alien from being considered an "employee" for purposes of the Act. *See also Dowling v. Slotnik,* 244 Conn. 781, 712 A.2d 396 (1998) (Immigration Reform Act does not preempt, either expressly or impliedly, the authority of states to award workers' compensation benefits to undocumented aliens).

If the IRCA does not foreclose the grant of benefits, Employer then asks us to employ the public policy exception we applied in *Graves v. Workmen's Compensation Appeal Board (Newman),* 668 A.2d 606 (Pa.Cmwlth.1995). In that case, we held that a claimant who was an escaped prisoner was not entitled to workers' compensation benefits because to grant him benefits would have been to reward him for his prison escape, and was an absurd and unreasonable result and contrary to the General Assembly's intention to provide compensation for work-related injuries. In so holding,[3] however, we expressly limited that holding to escaped prisoners stating that:

> [W]e expressly limit our holding to the proposition that an escape from official detention renders a claimant ineligible for benefits under the Act. We do not hold that any other violation of law com-

---

**2.** Section 2 of the Act defines an "employe" as:

> The term "employe," as used in this act is declared to be synonymous with servant, and includes –
> All natural persons who perform services for another for a valuable consideration, exclusive of persons whose employment is casual in character and not in the regular course of the business of the employer, and exclusive of persons to who articles or materials are given out to be made up, cleaned, washed, altered, ornamented, finished or repaired, or adapted for sale in the worker's own home, or on other premises, not under the control or manager of the employer[.]

77 P.S. § 22.

**3.** In *Graves,* the employer also contended claimant was not entitled to benefits because of his status under Section 301(a) of the Act which provides:

> Every employer shall be liable for compensation for personal injury to, or for the death of each employe.... Provided, That no compensation shall be paid when the injury or death ... is caused by the employe's violation of the law, ... but the burden of proof of such fact shall be upon the employer....

77 P.S. § 431.

Because an employer under this provision does not meet its burden of proof merely by showing that a claimant committed a violation of law but is required to prove that a causal connection exists between a violation of law and the claimant's injuries, and no connection existed between claimant's escape and injury, we rejected that argument.

mitted prior to employment leads to a similar result. This holding balances the legitimate needs of employees with society's interest in ensuring that the workmen's compensation system is not used to the advantage of prison escapees.

*Id.* at 609.

Even though *Graves* expressly limited its holding to escaped prisoners, Employer contends that we should extend our holding in *Graves* to illegal aliens because it would violate public policy to allow an illegal alien, who violated the law when entering this country, to be awarded workers' compensation benefits. We decline to do so. First, we specifically limited the *Graves* holding to escaped convicted criminals only, not illegal aliens who upon detection would normally just be deported from the United States. Moreover, it would not serve "public policy" to deny workers' compensation benefits to an illegal alien merely because of their immigration status because all that would do is reward an employer who failed to properly ascertain an employee's immigration status at the time of hire.[4] Further, to do so would potentially subvert any public policy against illegal immigration because employers may actively seek out illegal aliens rather than citizens or legal residents because they will not be forced to insure against or absorb the costs of work-related injuries.

In considering this question, other jurisdictions have substantially adopted that reasoning in holding that a claimant's illegal alien status does not bar the award of workers' compensation benefits. In *Mendoza v. Monmouth Recycling Corporation,* 288 N.J.Super. 240, 672 A.2d 221 (App.Div. 1996), the claimant, an illegal alien, sought compensation for a severe injury to his right hand after it was caught in a conveyor belt on an assembly line at the Monmouth Recycling Center. In granting the

claimant benefits, the New Jersey Superior Court rejected the WCJ's analysis of the claim petition under the purview of the state's unemployment compensation system stating that the mechanism, funding and underlying premise of the system was too different from that of the workers' compensation system to analogize the two systems. The court held that the state's workers' compensation statutory scheme did not expressly preclude an illegal alien from receiving benefits. Also, the court held that the effect on a worker of his injury had nothing to do with his citizenship or immigration status, and if his capacity to work had been diminished, that disability would continue whether his future employment was in this country or elsewhere. Furthermore, the court held that the claimant's need for medical treatment and right thereto did not derive from his immigration status but rather from work he had actually performed during the course of which he sustained an injury.

Finally, in *Mendoza,* the court held:

There are, however, even more fundamental reasons, in the absence of an express statutory bar, for according illegal aliens the benefit of the workers' compensation laws. To begin with, as we explained in *Montoya [v. Gateway Insurance Company,* 168 N.J.Super. 100, 104, 401 A.2d 1102 (App.Div.1979)]* "a well established body of law holds that illegal aliens have rights to access to the courts and are eligible to sue therein to enforce contracts and redress civil wrongs such as negligently inflicted personal injuries." We fully subscribe to that proposition. As we have pointed out, workers' compensation rests upon both contract and tort principles – the contract right in effect substitutes for the tort right an employee would otherwise have. It would not only be illogical but it would also serve no discernible public purpose to accord illegal aliens

---

4. We note that Employer did not produce any evidence of its investigation into Claimant's

immigration status at the time he was hired.

the right to bring affirmative claims in tort for personal injury but to deny them the right to pursue the substitutionary remedy for personal injuries sustained in the workplace[.]

*Id.* at 248, 672 A.2d at 225; *see also Fernandez–Lopez v. Jose Cervino, Inc.*, 288 N.J.Super. 14, 671 A.2d 1051 (App.Div. 1996); *Artiga v. M.A. Patout and Son*, 671 So.2d 1138 (La.Ct.App.1996) (the Louisiana Workers' Compensation Act does not expressly exclude illegal aliens from its definition of employee, and, as such, it does not exclude illegal aliens from securing workers' compensation benefits when justified); *Lang v. Landeros*, 918 P.2d 404 (Okla.Ct.App.1996) (because there is no express provision of the Oklahoma Workers' Compensation Act precluding compensation for an employee who is an illegal alien, such an employee is entitled to benefits); *Gene's Harvesting v. Rodriguez*, 421 So.2d 701 (Fla.Dist.Ct.App.1982) (where Florida statute specifically includes aliens among those "employees" entitled to benefits and nothing in the statute suggests that workers not lawfully immigrated are excluded, illegal aliens are not precluded from receiving benefits for a work-related injury).

## II.

■ If illegal aliens are not barred from obtaining workers' compensation benefits, Employer then contends that Claimant's benefits should be immediately suspended because he would be unavailable for suitable alternative employment. Relying on Virginia law, Employer contends that Claimant's illegal alien status precludes him from marketing his remaining work capacity and his inability to comply with that requirement precludes him from receiving benefits. In *Manis Construction*

*Company v. Arellano*, 13 Va.App. 292, 411 S.E.2d 233 (1991), the Virginia Court of Appeals held that the IRCA preempted Virginia law where it prohibited illegal aliens from legally working in the United States and, thus, precluded the claimant from legally marketing his work capacity as required to receive workers' compensation benefits. Likewise, in *Granados v. Windson Development Corporation*, 257 Va. 103, 509 S.E.2d 290 (1999), the Supreme Court of Virginia held that the claimant, who was an illegal alien, was not an "employee" under the Virginia Workers' Compensation Act, and, as such, was not entitled to benefits. However, unlike the Virginia Workers' Compensation Act, benefits under the Pennsylvania Workers' Compensation Act are not conditioned upon whether the employee has marketed his remaining work capacity. Instead, once a claimant establishes that he can no longer perform his pre-injury job duties, he is entitled to benefits until the employer proves that he is able to perform other work.

■ In this case, to suspend or modify benefits Employer must establish Claimant's earning power by establishing that he can perform other work. Actual job referrals would not have to be made to determine the extent of Claimant's earning power because requiring Claimant to go to interviews would be useless because he would be unable to accept any position as it would be illegal for him to work. Rather, as Claimant himself suggests, all that needs to be shown is evidence of earning power similar to Act 57.[5] However, because no evidence was presented by Employer to establish the type of positions Claimant could perform, Employer is not

5. Act of June 24, 1996, P.L. 350, No. 5 § 4, 77 P.S. § 512. Because Claimant's injury predated Act 57, Employer normally would be required to establish actual job referrals pursuant to *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction)*, 516 Pa. 240, 532 A.2d 374 (1987). *See also Schneider, Inc. v. Workers' Compensation Appeal Board (Bey)*, 560 Pa. 608, 747 A.2d 845 (2000) (requiring a showing of job availability where an employee who otherwise could return to sedentary or light-duty work but cannot because of nonwork-related injuries would be pointless and run contrary to the purpose of the Act.)

entitled to suspension or modification of Claimant's workers' compensation benefits.

 Accordingly, because an illegal alien is not precluded from receiving workers' compensation benefits simply because of his immigration status and Employer failed to establish its right to a suspension of benefits, the decision of the Board is affirmed.[6]

### *ORDER*

AND NOW, this 12th day of April, 2000, the order of the Workers' Compensation Appeal Board, dated September 29, 1999, No. A97–5316, is affirmed.

---

**6.** Employer also contends that it has a protected property interest in the statutory remedies of suspension and modification, and to allow Claimant to continue receiving benefits when he is no longer disabled is a violation of its Fourteenth Amendment rights. However, as we have stated above, Employer failed to establish its right to a suspension or modification of Claimant's benefits.