985 So.2d 305 (2008)
Carlos and Nora RODRIGUEZ
v.
BOLLINGER GULF REPAIR.
No. 2007-CA-1476.
Court of Appeal of Louisiana, Fourth Circuit.
May 21, 2008.
Rehearing Denied June 25, 2008.
*306 David W. Bernberg, Henna Ghafoor, The Law Office of David W. Bernberg, L.L.C., New Orleans, LA, for Plaintiffs/Appellants.
Bradley J. Schlotterer, Stephen C. Hanemann, Kean Miller Hawthorne D'Armond McCowan & Jarman, L.L.P., New Orleans, LA, for Defendant/Appellee.
(Court composed of Judge CHARLES R. JONES, Judge DENNIS R. BAGNERIS, SR., and Judge ROLAND L. BELSOME).
DENNIS R. BAGNERIS, SR., Judge.
This is an appeal by Carlos Rodriguez (a.k.a. Ramon Caldera) and Nora Rodriguez from an October 5, 2007, judgment of the trial court that granted a motion to dismiss Plaintiffs' claims against defendant, Bollinger Gulf Repair, L.L.C. ("Bollinger Gulf Repair") with prejudice. For the reasons stated more fully herein, we hereby affirm the trial court judgment.
FACTS
On January 10, 2005, Carlos Rodriguez ("Plaintiff) filled out an employment application with HUTCO, Inc. (labor contractor for Bollinger Gulf Repair). On this application, Plaintiff identified himself as "Carlos Rodriguez," who was born on "August 14, 1952," and had a Social Security number of "xxx-xx-6784." He was hired based on this application, and thereafter began working for HUTCO, Inc. and Bollinger Gulf Repair. A few weeks later, on January 22, 2005, Plaintiff allegedly had an unwitnessed accident, and filed suit in the name of "Carlos Rodriguez."
In December 2006, the District Director of the Social Security Administration ("Director") in Massachusetts obtained information that there were two individuals claiming the same Social Security number  one lived in Louisiana and the other lived in Massachusetts. As a result, the Director asked the Carlos Rodriguez who lived in Massachusetts "hereinafter, Carlos Rodriguez" to come to the Social Security Administration's office, and requested that he bring several original documents and his brother to establish his identity. Carlos Rodriguez complied with this request and met with the Director on December 31, 2006. Subsequent to the meeting, the Director wrote a letter to HUTCO, Inc. whereby he stated that he was "sure" that the gentleman in Massachusetts was the correct person with Social Security number xxx-xx-6784. Specifically, the letter stated, in pertinent part:
On December 31, 2007 I interviewed Carlos Rodriguez. He had a Massachusetts picture ID, and his birth certificate. I verified this information with records on file for every one who files for a Social Security card. I am convinced that the person lawfully entitled to use SSN [xxx-xx]-6784 is the gentleman I interviewed. I am sure of this because Mr. Rodriguez has a representative payee to administer his funds. This individual is his brother. I compared the names of their parents on the birth certificate and the names of the parents on the brother's Social Security record and they match.
Thereafter, counsel for Bollinger Gulf Repair scheduled a deposition of Carlos Rodriguez to take place in Boston, Massachusetts. At his deposition in Massachusetts, Carlos Rodriguez testified that his Social Security Number is xxx-xx-6784, his date of birth is August 14, 1952, and that he was only married one time, and that was to Evelyn Gonzalez Rodriguez. He testified that they were later divorced in 1977. Carlos Rodriguez also testified that he remembers his car getting broken into sometime in 1994, and his personal *307 identification was stolen. He testified that since that time, he has had problems with someone trying to use his identity.
Shortly after returning from the deposition in Boston, Plaintiff conceded by way of "Supplemental and Amending Answers to Interrogatories" that his real name is Ramon Caldera and that he used the name "Carlos Rodriguez" as an alias for at least five years preceding the subject accident. The text of Interrogatory Number 10, Plaintiffs answer, and Plaintiffs supplemental answer are as follows:
INTERROGATORY NO. 10:
Please state your full name and present address, all residences over the past ten years, any nicknames or aliases, your citizenship, your place and date of birth, and your Social Security No.
PLAINTIFF'S ANSWER TO INTERROGATORY NO. 10 (AS OF 6/12/06):
I [Carlos Rodriguez] am presently residing in Lafayette, Louisiana, at 200 Lorie Avenue, Apartment A, 70507. Prior to Hurricane Katrina, I was living at 3660 Elysian Fields Avenue, New Orleans, Louisiana 70122. I was born in Puerto Rico in 1952. My Social Security number is XXX-XX-6784.
PLAINTIFF'S SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 10 (AS OF 9/5/07):
Plaintiff has been using the alias "Carlos Rodriguez" for the last nine years and has not worked using any other alias. Plaintiffs birth name is "Ramon Caldera." He was born on January 14, 1964 in Naraciabo, Venezuela. He arrived in the United States in 1996, and began using Social Security number XXX-XX-6784 in 1998.
Plaintiff Nora Rodriguez's married name is Naara Caldera. The use of "Nora" in these proceedings is a typographical error.
Thereafter, Bollinger Gulf Repair filed a motion to dismiss with prejudice due to the fact that Plaintiff has filed a lawsuit under a false name using a false identity. Following a hearing on the motion, the trial court granted the motion to dismiss Plaintiffs' claims with prejudice. Plaintiffs now appeal this final judgment.
DISCUSSION
On appeal, Plaintiffs sole assignment of error is that the trial court erred when it granted Bollinger Gulf Repair's motion to dismiss with prejudice because of the fact that Plaintiffs true identity did not alter any material facts surrounding the subject accident and injury. Plaintiff argues that "the fact that plaintiff-appellant's real name is Ramon Caldera is an insignificant element in the liability claim against defendant, and allowing this case to proceed forward will not subject defendant to any additional liability than it would have were this case originally filed under the name of Ramon Caldera."
Although neither the Louisiana Supreme Court nor this Court have addressed this issue, we do find two federal cases, Zocaras v. Castro, 465 F.3d 479 (11th Cir.2006) and Dotson v. Bravo, 321 F.3d 663 (7th Cir.2003), although not binding on this Court, persuasive in determining whether a trial court can dismiss a case with prejudice when a plaintiff files his/her complaint under a false name. In Zocaras, the plaintiff filed an excessive force § 1983 action against several arresting police officers for injuries he alleged he sustained when he was arrested. This lawsuit was filed under a false name  the same false name plaintiff gave when he was arrested. At some point in the litigation, it was uncovered that plaintiff filed the lawsuit using a false name; however, plaintiff still attempted to go forward with the case. In dismissing the case with prejudice, the Court stated:

*308 A trial is not a masquerade party nor is it a game of judicial hide-n-seek where the plaintiff may offer the defendant the added challenge of uncovering his real name. We sometimes speak of litigation as a search for the truth, but the parties ought not have to search for each other's true identity. . . .
* * *
Because courts must be able to preserve the integrity of the judicial process, we have no hesitation in concluding that a party who files suit under a false name and proceeds with that deception right up to trial loses the right to seek judicial relief for the claims he was advancing.
Zocaras, 465 F.3d at 484-485.
In Dotson, the plaintiff brought a § 1983 suit against the city of Chicago and police alleging malicious prosecution and other state law claims. This lawsuit was also later dismissed with prejudice upon discovering that plaintiff had filed under a false name. As stated by the U.S. Seventh Circuit Court of Appeals:
Filing a case under a false name deliberately, and without sufficient justification, certainly qualifies as flagrant contempt for the judicial process and amounts to behavior that transcends the interests of the parties in the underlying litigation. The instant case represents precisely the situation where one party's conduct so violates the judicial process that imposition of a harsh penalty is appropriate not only to reprimand the offender, but also to deter future parties from trampling upon the integrity of the court. (Footnote omitted.)
Dotson, 321 F.3d at 668.
Our review of the case law leads this Court to find that the instant case represents precisely the situation where one party's conduct so violates the judicial process that imposition of a harsh penalty, as dismissing the case with prejudice, is appropriate. Plaintiffs list of egregious conduct includes: (1) lying about his true name, place and date of birth on his application in order to obtain a job at the Bollinger shipyard; (1) filing a civil lawsuit under a false name; (2) lying under oath about his true name and birth date in a deposition taken on July 25, 2006; and (3) serving answers, in June of 2006, to interrogatories propounded by Bollinger Gulf Repair containing lies about his true identity, date of birth, and his place of birth. Because courts must be able to preserve the integrity of the judicial process, this Court also finds that a party who files a suit under a false name and proceeds with that deception loses the right to seeks judicial relief for the claims he/she was advancing.
Accordingly, we hereby affirm the trial court judgment, which granted Bollinger Gulf Repair's motion to dismiss Plaintiffs' claims with prejudice.
AFFIRMED.
BELSOME, J., dissents with reasons.
BELSOME, J., dissents with reasons.
If the majority opinion is allowed to stand, it will not only penalize legitimate businesses that follow the law, but also condone the "treat[ment of] illegal aliens as disposable commodities [that] may be replaced the moment they are damaged." Rosa v. Partners in Progress, Inc., 152 N.H. 6, 868 A.2d 994, 1000 (2005). (emphasis added).[1]. Conversely, *309 the opposite outcome could lead to an increase in documentation of workers and safer working conditions for all Louisiana workers. Our courts have traditionally recognized the right of court access for undocumented workers "to enforce contracts and redress civil wrongs such as negligently inflicted personal injuries." Rosa, 868 A.2d 994, 997 (citing Mendoza v. Monmouth Recycling Corp., 288 N.J.Super. 240, 672 A.2d 221, 225 (1996)). We must enforce that principal while determining a commensurate penalty for the Appellant's misrepresentations. Thus, I agree with the majority's view that lying to a tribunal is inexcusable; however, the penalty for such behavior must fit the facts and circumstances.
In Rosa, the Supreme Court of New Hampshire found that even though the plaintiff was not legally entitled to work in the United States, there was no reason to separate an undocumented worker's claim for lost earning capacity from the panoply of other claims that he may make under tort law, for "[s]urely the effect on the worker of his injury has nothing to do with his citizenship or immigration status." Rosa, 868 A.2d at 997 (quoting Mendoza, 672 A.2d at 224). Likewise, in the instant case, Appellant's admitted identity theft has no bearing on whether Appellee was negligent in causing Appellant's injuries.[2]
The Rosa Court next addressed the issue of whether the worker's lost earning capacity should be measured by the amount the alien would have earned by lawfully Working in the United States, or by what he would have earned in his country of origin. Rosa, 868 A.2d at 997. The Court relied on Justice Breyer's dissent[3] in Hoffman v. Plastic Compounds, Inc. v. NLRB, 535 U.S. 137, 122 S.Ct. 1275, 152 L.Ed.2d 271 (2002), which disagreed with the majority's holding that an undocumented worker unlawfully fired by his employer was not entitled to back pay. Id. The Rosa Court cited Justice Breyer's assertion that withholding back pay to an undocumented employee who was wrongfully discharged by an employer who knew of his status would effectively encourage employers to hire illegal aliens because it would "lower[ ] the cost to the employer of an initial labor law violation." Id. (quoting Hoffman, 535 U.S. at 155, 122 S.Ct. 1275). The Court further noted:
[Justice Breyer's] dissent pointed out that, among other things, the majority's decision addressed an award to an illegal alien who had obtained his job by submitting fraudulent documents, and argued, "Were the Board forbidden to assess backpay to a knowing employer  a circumstance not before us today . . .  this perverse economic incentive, which runs directly contrary to the immigration statute's basic objective, would be obvious and serious."
Id. (quoting Hoffman, 535 U.S. at 155-56, 122 S.Ct. 1275)(emphasis in original). The Court found that "[a] policy that does not permit recovery will marginally lower the costs for the employment of illegal aliens, and `employers might find it economically advantageous to hire . . . undocumented workers and run the risk of sanctions under the [Immigration Reform and Control Act].'" Rosa, 868 A.2d at 1000 (quoting Patel v. Quality Inn South, 846 F.2d 700, *310 704 (11th Cir.1988)).[4]
Thus, the Court found that "tort deterrence principles provide a compelling reason to allow an award of [lost earning capacity] against a person responsible for an illegal alien's employment when that person knew or should have known of that illegal alien's status," and that to find otherwise would provide an incentive for such persons to target undocumented workers for the most dangerous jobs or to provide them with substandard working conditions. Rosa, 868 A.2d at 1000.[5]
In this case, although Appellee submits that it had no reason to believe that Appellant was not Carlos Rodriguez, Appellee arguably knew or should have known of Appellant's status. See Rosa, 868 A.2d at 1000. While the plaintiff in Rosa did not file false pleadings, he nevertheless sought compensation for wages that he earned illegally. Similarly, Appellant, an undocumented worker, seeks compensation for injuries that he sustained while employed on Appellee's premises. To deny Appellant the opportunity to bring his claim could provide an incentive for employers in Louisiana to subject undocumented workers (or suspected undocumented workers) to substandard working conditions or to provide them with the most dangerous assignments. See Rosa, 868 A.2d at 1000. Furthermore, the public policy of discouraging illegal immigration will not be undermined by allowing Appellant his day in court. See Fernandez-Lopez v. Jose Cervino, Inc., 288 N.J.Super. 14, 20, 671 A.2d 1051, 1054 (App.Div.1996).[6] "It cannot be supposed that anyone illegally enters this country for the purpose of initiating litigation." Id.[7] Although Appellant's *311 use of an alias on the pleadings and in discovery was indisputably in contempt of the judicial process, it should not serve as an absolute bar to his access to the court under these circumstances. In this case, Appellant assumed the alias of Carlos Rodriguez not to destroy a person's credit history, but rather to merely gain lawful employment and provide for his family. Furthermore, for several years, Appellant was paying benefits into a system that he could never hope to recover. While neither misappropriation of identity is acceptable, the distinction is of great significance in this particular case.
Appellant testified that the injuries he sustained as a result of his accident required spinal fusion surgery and numerous physician visits; that he experienced numbness in his right leg, necessitating the use of a walker; and that due to the pain and immobility as a result of the accident and surgery, he also suffered a sharp decline in his general quality of life. Because Appellant alleges that he sustained these painful and debilitating injuries as a result of Appellee's negligence, allowing Appellee to be completely unaccountable for any alleged liability in this case will not only serve to reward employers who hire employees that employers knew or should have known were undocumented aliens, but will also be a disincentive for those employers to provide a safe working environment for employees. Therefore, this writer would find that the appropriate sanction under these facts would be to assess Appellant with the costs of attorney's fees and other expenses associated with discovering plaintiffs true identity, and allow Appellant to amend the pleadings to substitute his true name.
I agree with the majority's statements regarding the egregiousness of the Appellant's actions regarding identity theft and Social Security fraud. I disagree, however, with the majority's determination that "the admittedly harsh penalty" and "extreme sanction" of dismissal with prejudice is warranted for filing false pleadings under these particular facts and circumstances. Zocaras v. Castro, 465 F.3d 479, 485 and 491 (11th Cir.2006). I do not agree that "the sanction imposed . . . fit[s] the interest jeopardized and the harm caused by the violation" in this case. Zocaras, 465 F.3d at 485. Likewise, there is no public policy that is served by refusing access to our courts to undocumented workers who are injured through another's negligence. Arteaga v. Literski 83 Wis.2d 128, 265 N.W.2d 148, 150 (1978).[8] Just as Louisiana must shield her employers from unwarranted claims, she must also afford all workers the opportunity to assert claims in a court of law. Therefore, I must respectfully dissent.
NOTES
[1] Rosa involved an undocumented worker who was injured at a construction site and brought suit against the general contractors, his employer, the subcontractor, and the owner of the aerial lift that injured him.
[2] See Rosa, 868 A.2d at 1002 (citing Melendres v. Soaks, 105 Mich.App. 73, 306 N.W.2d 399, 402 (1981)(noting that "the matter of plaintiff's status as an illegal alien was clearly irrelevant on the question of liability").
[3] Justice Breyer was joined by Justices Stevens, Souter and Ginsburg in his dissent.
[4] The Rosa Court also cited a federal district court case regarding the economic incentive of employers to hire undocumented workers:

[E]very remedy extended to undocumented workers . . . provides a marginal incentive for those workers to come to the United States. It is just as true, however, that every remedy denied to undocumented workers provides a marginal incentive for employers to hire those workers. The economic incentives are in tension. Given this tension, the courts must attempt to sensibly balance competing considerations.
Rosa, 868 A.2d at 1000 (quoting Singh v. Jutla, 214 F.Supp.2d 1056, 1062 (N.D.Cal.2002)(emphasis added).
[5] The Rosa Court recognized that "there may be no other contexts `in which a person who has derived income from an illegal activity is permitted, after a personal injury forces him to abandon that activity, to recovery damages based on the lost stream of illegal income through judicial proceedings in a court of law.'" Rosa, 868 A.2d at 1000-01 (quoting Sanango v. 200 East Street Housing Corp., 15 A.D.3d 36, 788 N.Y.S.2d 314, 320-21 (2004). The Court further noted that "although allowing an illegal alien to recover [ ] may transform the illegal alien's unlawful wages into lawful compensation, a person responsible for an illegal alien's employment may avoid this situation by refusing to employ the illegal alien in the first place," and that such a rule would not frustrate congressional public policy against employment of illegal aliens in the United States. Rosa, 868 A.2d at 1001 (emphasis in original).
[6] The Court went on to state that "the public policy against illegal immigration may actually be subverted by refusing to grant undocumented aliens workers' compensation benefits", as "[e]mployers might be anxious to hire illegal aliens rather than citizens or legal residents because they will not be forced to insure against or absorb the costs of industrial accidents." Fernandez-Lopez, 671 A.2d at 1054 (emphasis added). See also Arteaga, 265 N.W.2d at 150 (finding that "if the policy is to discourage illegal immigration, that policy is not furthered by refusing aliens access to our courts").
[7] (quoting Montoya v. Gateway Ins. Co., 168 N.J.Super. 100, 401 A.2d 1102 (App.Div.), certif. denied, 81 N.J. 402, 408 A.2d 796 (1979)); see also Arteaga, 265 N.W.2d at 150 ("[i]t cannot be seriously argued that people enter this country illegally so that they can recover for an injury that will be inflicted upon them later").
[8] It is worth noting that the Louisiana Constitution, in Article 1, Section 22, entitled "Access to Courts" provides as follows:

All courts shall be open and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights.
La. Const. Art. 1, § 22 (emphasis added).